**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NYC APPAREL FZE,

Plaintiff,

v.

U.S. CUSTOMS AND BORDER PROTECTION,

Defendant.

**Civil Action No. 04-2105 (RBW)**

**MEMORANDUM OPINION**

The plaintiff has filed this lawsuit seeking disclosure of certain records requested pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq. (2000). Complaint ("Compl.") ¶ 1. Currently before the Court are the parties' cross-motions for summary judgment.[1] For the reasons set forth below, the Court denies both parties' motions without prejudice.

## I. Background

The plaintiff, NYC Apparel FZE ("NYC Apparel"), an exporter of merchandise from the United Arab Emirates ("UAE"), Compl. ¶ 3, claims to have entered into an

[1] The following papers have been submitted in connection with these motions: (1) Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."); (2) Defendant's Statement of Material Facts Not in Dispute ("Def.'s Stmt."); (3) Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Mem."); (4) Plaintiff's Supplement of Material Facts Not in Dispute ("Pl.'s Supp. Facts"); (5) Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Def.'s Opp."); (6) Defendant's Response to Plaintiff's Statement of Material Facts Not in Dispute ("Def.'s Resp."); and (7) Plaintiff's Reply to Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Reply").

agreement to ship merchandise from the UAE to Mexico by way of Los Angeles, California. Id. at ¶¶ 5-7. On July 9, 2003, the defendant, the U.S. Customs and Border Protection ("Customs" or "the CBP"), seized a container being shipped by the plaintiff through the Los Angeles-Long Beach Seaport and assigned to it Seizure Number 2003-2704-000743.[2] Def.'s Opp., Ex. 1, Declaration of Robert P. Thierry ("Thierry Decl.") ¶¶ 3-5; Compl. ¶ 7.[3] On July 12, 2003, Customs seized another container being shipped by the plaintiff through the Los Angeles-Long Beach Seaport, assigning to it Seizure Number 2003-2704-000751.[4] Def.'s Opp., Ex. 1 (Thierry Decl.) ¶¶ 6-8; Compl. ¶ 6. According to Customs, both shipments were illegal imports bound not to Mexico but to El Paso, Texas.[5] Def.'s Opp., Ex. 1 (Thierry Decl.) ¶¶ 4,7; Pl.'s Mem., Ex. B (seizure notice) at 1.

On September 3, 2003, the plaintiff's counsel sent two letters to the CBP Port Director at the Los Angeles-Long Beach Seaport, requesting, pursuant to the FOIA, all information pertaining to the seizure of the two containers.[6] Compl. ¶ 9; Def.'s Mem.,

---

[2] The complaint states that this seizure occurred on July 12, 2003, Compl. ¶ 7. However, the seizure notice issued to the plaintiff's counsel on October 1, 2003, corroborates Robert Thierry's declaration, which indicates that Seizure Number 2003-274-000743 occurred on July 9, 2003. Pl.'s Mem., Ex. B (seizure notice) at 1; Def.'s Opp., Ex. 1 (Thierry Decl.) ¶¶ 3-5.

[3] Robert Thierry is the Los Angeles area Director of the Office of Fines, Penalties, and Forfeitures ("LA FP&F") for Customs, and is "responsible for the administrative processing of seizure and forfeiture cases involving violations of U.S. customs laws and other laws enforced by [the] CBP in the Los Angeles area." Def.'s Opp., Ex. 1 (Thierry Decl.) ¶ 1.

[4] Each container seized held over 300 cartons of wearing apparel. Def.'s Opp., Ex. 1 (Thierry Decl.) ¶¶ 3,7.

[5] The seizures were effected pursuant to 19 U.S.C. § 2595a(c)(1)(A). Pl.'s Mem., Ex. B (seizure notice) at 1; Def.'s Opp., Ex. 1 (Thierry Decl.) ¶¶ 4, 7.

[6] On September 11, 2003, the plaintiff also filed a petition, under 19 U.S.C. § 1618, for relief from administrative forfeiture of the merchandise in question. See Pl.'s Mem., Ex. C (letter from Customs to (continued...)

Ex. C (FOIA request); Def.'s Stmt. ¶ 1. Specifically, the letters stated that the plaintiff sought "all information relied upon by Customs" in connection with the seizures, including "the manuals, guidelines, directives, etc. relied upon by Customs" and "all records and/or information that proves [the] alleged violations in this case." Def.'s Mem., Ex. C (FOIA request).

On December 19, 2003, after establishing that the plaintiff's counsel was duly authorized to act on the plaintiff's behalf,[7] the Port Director informed the plaintiff's counsel by letter that a search of the seizure case files had been conducted,[8] that eighty-four pages of documents had been determined to be responsive to the plaintiff's request,[9] and that all responsive documents were exempt from release under the FOIA

---

[6](...continued)
the plaintiff's counsel, November 23, 2004) at 1; Def.'s Opp., Ex. 1 (Thierry Decl.) ¶ 11. This petition was denied on November 23, 2004. Pl.'s Mem., Ex. C (letter from Customs to the plaintiff's counsel) at 1; Def.'s Opp., Ex. 1 (Thierry Decl.) ¶ 13. On December 13, 2004, the plaintiff filed a supplemental § 1618 petition. See Pl.'s Mem, Ex. E (letter from Customs to the plaintiff's counsel, dated March 2, 2005) at 1; Def.'s Opp., Ex. 1 (Thierry Decl.) ¶ 14. This petition was denied on February 23, 2005, and the plaintiff was informed of the denial by letter on March 2, 2005. Pl.'s Mem., Ex. E (letter from Customs to the plaintiff's counsel) at 1; Def.'s Opp., Ex. 1 (Thierry Decl.) ¶ 15. By letter dated March 3, 2005, Customs issued a Notice of Forfeiture, which stated that the seized merchandise would be subject to summary forfeiture proceedings if the plaintiff did not file a claim and post a cash bond within the appropriate time. Pl.'s Mem., Ex. F (notice of forfeiture); Def.'s Opp., Ex. 1 (Thierry Decl.) ¶ 16. This Court has been provided no further information regarding the forfeiture of the plaintiff's merchandise. However, because the administrative forfeiture proceedings and the CBP's denial of the plaintiff's petitions are not before the Court, the ultimate disposition of the administrative forfeiture, whatever it may be, does not bear on the outcome of this FOIA action.

[7] See Compl. ¶¶ 10-19; Def.'s Stmt. ¶¶ 2-11.

[8] According to the Declaration of Joanne Roman Stump ("Stump Decl."), to conduct this search "the FOIA processor at LA FP&F . . . examined the seizure case files for FP&F case numbers 2003-2704-000743 and 2003-2704-000751 to find each document that would be responsive to the request." Def.'s Mem, Ex. 1 (Stump Decl.) ¶ 16.

[9] The defendant reiterates in its opposition to the plaintiff's cross-motion for summary judgment that the eighty-four pages of documents "do not constitute the entire administrative seizure files for the underlying seizures," but rather comprise all records in the seizure files deemed to be responsive. Def.'s Opp. at 3-4.

and were being withheld in their entirety.[10] Compl. ¶ 19; Def.'s Mem., Ex. J (letter from Customs to the plaintiff's counsel, dated December 19, 2003); Def.'s Stmt. ¶ 11. The plaintiff appealed this decision to the CBP's FOIA Appeals Officer on January 6, 2004. Compl. ¶ 20; Def.'s Mem., Ex. K (FOIA appeal); Def.'s Stmt. ¶ 12. The letter was directed to Joanne Roman Stump in the CBP's Disclosure Law Branch of the Office of Regulations and Rulings.[11] Def.'s Stmt. ¶ 12; Def.'s Mem., Ex. 1, Declaration of Joanne Roman Stump ("Stump Decl.") ¶ 14.

By letter dated February 23, 2005, over a year after the plaintiff filed its FOIA appeal with the CBP and three months after the plaintiff initiated the present lawsuit,[12] Ms. Stump affirmed in part the decision of the Los Angeles Port Director.[13] Upon review of the record, Ms. Stump determined that the plaintiff was a "third-party FOIA requester . . . [who] is not entitled to get information which is submitted to [the] CBP by business

---

[10] The eighty-four pages of documents were withheld pursuant to FOIA exemptions (b)(2), (b)(4), and (b)(5). Def.'s Mem., Ex. 1 (Stump Decl.) ¶ 16 and Ex. J (letter from Customs to the plaintiff's counsel, dated December 19, 2003) at 1.

[11] Joanne Roman Stump is the FOIA Appeals Officer and Branch Chief of the Disclosure Law Branch, International Trade Compliance Division, Office of Regulations and Rulings for the CBP. Def.'s Mem., Ex. 1 (Stump Decl.) ¶ 1. Ms. Stump is responsible for "(1) reviewing initial FOIA decisions that are subject to administrative appeal; (2) giving guidance and instructions to CBP personnel regarding the processing of FOIA and Privacy Act requests; (3) adjudicating administrative appeals that concern FOIA and Privacy Act requests; and (4) overseeing all CBP activities related to information disclosure." Id.

[12] The plaintiff filed its complaint in this case on December 3, 2004, stating that "[p]ursuant to 5 U.S.C. § 552(a)(6)(C), the failure of Customs to respond to the [FOIA] appeal within the time prescribed by law constitutes a deemed denial" and the exhaustion of the plaintiff's administrative remedies. Compl. ¶ 25.

[13] The defendant's statement of undisputed material facts, with which the plaintiff apparently agrees, see Part III.A, infra, states that on November 23, 2004, the agency initially denied the plaintiff's FOIA appeal. Def.'s Stmt. ¶¶ 12-13. However, as indicated in note 6, supra, the CBP's denial letter of November 23, 2004, was in response to the plaintiff's § 1618 petition for relief from administrative forfeiture proceedings, Pl.'s Mem., Ex. C (letter from Customs to the plaintiff's counsel), Compl. ¶ 22, rather than the plaintiff's appeal of the agency's response to its FOIA request. Thus, the record indicates that Customs had not yet acted on the plaintiff's January 6, 2004 appeal to the agency's FOIA Appeals Officer when the plaintiff filed its complaint with this Court on December 3, 2004.

submitters as part of the public disclosure that occurs when a FOIA request is processed," but that it was nevertheless appropriate to release thirty-five pages of responsive documents to the plaintiff with redactions pursuant to FOIA exemptions (b)(2), (b)(4), (b)(6), (b)(7)(C), and (b)(7)(E). Def.'s Mem, Ex. 1 (Stump Decl.) ¶¶ 15, 17; Def.'s Mem., Ex. L (letter from Customs to the plaintiff's counsel, February 23, 2005) at 2; Def.'s Stmt. ¶ 15. Ms. Stump further informed the plaintiff that nineteen other pages of responsive documents were to be withheld in full pursuant to FOIA exemptions (b)(2), (b)(4), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(E). Id. The remaining thirty pages of the eighty-four pages of responsive documents discovered in the seizure files by Customs were duplicates of pages that had been partially released or withheld in their entirety. Id.

Following Ms. Stump's February 23, 2005 letter to the plaintiff, Customs filed a motion for summary judgment along with two indexes produced pursuant to Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973),[14] which provides the defendant's justification for withholding all or part of the fifty-four non-duplicative pages of responsive documents, Def.'s Mem., Exs. A (Vaughn index, Documents Released In Part) and B (Vaughn index, Documents Withheld In Full).[15] In the papers currently before the Court, the defendant contends that its search was adequate to discover all responsive documents, Def.'s Mem. at 5-8, that it has properly withheld all or part of

---

[14] Ms. Stump was the CBP official responsible for compiling the Vaughn indexes. Def.'s Stmt. ¶ 15.

[15] According to one of the Vaughn indexes, six pages of responsive documents – Document Numbers 009, 016, 017, 020, 027, and 028 – were released to the plaintiff without redaction. Def.'s Mem, Ex. A (Vaughn index).

these documents pursuant to FOIA exemptions (b)(2), (b)(4), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(E), id. at 8-25, and that it has disclosed all reasonably segregable portions of the documents, id. at 25-26. Accordingly, the defendant argues that it is entitled to summary judgment. Def.'s Mot. at 1. The plaintiff, by contrast, contends that the defendant's search was not adequate, Pl.'s Reply at 2-3, that the documents that were discovered have been improperly redacted and withheld under exemptions (b)(2), (b)(4), (b)(5), and (b)(7)(A),[16] Pl.'s Mem. at 3-9, and that the defendant has not disclosed all reasonably segregable information, Pl.'s Mem. at 9-11.[17] For the reasons that follow, the Court concludes that it lacks sufficient information to determine the adequacy of the defendant's search, and must therefore deny both parties' motions for summary judgment and require supplemental information from the defendant.

## II. Standard of Review

Courts will grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

[16] The plaintiff does not contest the defendant's withholdings under FOIA exemptions (b)(6), (b)(7)(C), and (b)(7)(E). Pl.'s Mem. at 8, 9. Accordingly, the Court need not address whether it was proper for the CBP to withhold or redact information under these exemptions. This includes information contained in Document Numbers 001-003, 010-015, 018-019, 021-026, and 033-035, which were released to the plaintiff partially redacted, and Document Numbers 036, 038-040, and 054, which were withheld in full pursuant to several FOIA exemptions. Pl.'s Mem., Exs. A & B (Vaughn indexes). All documents other than Document Number 012 were withheld or redacted based, at least in part, on exemptions other than (b)(6), (b)(7)(C), and (b)(7)(E). Id.

[17] The plaintiff also discusses at length the defendant's alleged delays in responding to the plaintiff's FOIA request, Pl.'s Mem. at 11-14, which, the plaintiff avers, "have impaired NYC Apparel's ability to recover its merchandise administratively," id. at 13. It is unclear to the Court what, if any, relief the plaintiff is seeking based on these alleged delays above and beyond the full and expeditious disclosure of the requested documents. To the extent that the plaintiff is requesting relief that bears directly on the administrative forfeiture proceedings concerning the plaintiff's merchandise, such relief is immaterial to the FOIA action and, as such, not within the ambit of the proceedings now before this Court.

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a motion under Rule 56(c), the Court must view the evidence in the light most favorable to the non-moving party. VoteHemp, Inc. v. Drug Enforcement Admin., 237 F. Supp. 2d. 55, 59 (D.D.C. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). The non-moving party, however, cannot rely on "mere allegations or denials . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Harrison v. Executive Office for U.S. Attorneys, 377 F. Supp. 2d 141, 145 (D.D.C. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

In a FOIA action, "the defendant agency has the burden . . . of demonstrating that the requested documents are exempt from disclosure under [the] FOIA." Miller v. Dep't of Navy, 383 F. Supp. 2d 5, 13 (D.D.C. 2005) (citing 5 U.S.C. § 552(a)(4)(B); Al-Fayed v. CIA, 254 F.3d 300, 305 (D.C. Cir. 2001)). The Court will grant summary judgment to the government in a FOIA case only if the defendant agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Friends of Blackwater v. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting Greenberg v. Dep't of Treasury, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)). To satisfy its burden and prove that it has fully discharged its FOIA obligations, a defendant agency typically submits a Vaughn index, which provides "a relatively detailed justification" for each withheld document, "specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of [the] withheld document to which they apply." King v. Dep't of Justice, 830 F.2d 210, 219 (D.C. Cir. 1987) (quoting Mead Data Central, Inc. v. Dep't of Air Force, 566

F.2d 242, 251 (D.C. Cir 1977)); see also Vaughn, 484 F.2d at 827. Moreover, a court, in granting summary judgment, may also rely on affidavits submitted by the agency "if the affidavits describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt [from disclosure].'" Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980)).

## III. Legal Analysis

The defendant contends as an initial matter that summary judgment is appropriate because there exists no genuine issue of material fact. Def.'s Mot. at 1. In support of this contention, the defendant has filed a Statement of Material Facts Not In Dispute, Def.'s Stmt., and the plaintiff does not dispute the facts as alleged by the

defendant, Pl.'s Reply at 2.[18] Accordingly, the Court concludes that there are no material facts in dispute in this case.

**A. The Adequacy of the Search**

The plaintiff argues that the defendant's search for responsive documents was neither reasonable nor adequate. Pl.'s Reply at 2. The plaintiff contends that the defendant failed to search its databases – specifically, the Treasury Enforcement Computer System ("TECS") and the Automated Commercial System ("ACS") – for information that is applicable to the seizure of its property. Id. at 3. Quoting The Nation Magazine v. Customs Service, 71 F.3d 885, 891 (D.C. Cir. 1995), the plaintiff describes the TECS database as "contain[ing] data on violators and possible violators of laws enforced by Customs" and the ACS database as containing "information regarding merchandise imported into the United States," Pl.'s Reply at 2-3. The plaintiff reasons that "[t]here must be documents in these systems relevant to [its] request" because "it is an alleged violator and it was importing in-bond merchandise into the United States." Id. at 3. Therefore, the plaintiff opines, the TECS and ACS databases "are absolutely relevant to [its] case" and should have been searched. Id. The plaintiff concedes, however, that "[t]he seizure case file is the logical location for the responsive records." Pl.'s Mem. at 3.

---

[18] Though in agreement with the defendant concerning the material facts contained in the defendant's Statement, the plaintiff does submit a Supplement of Material Facts Not in Genuine Dispute with its opposition and cross-motion for summary judgment. Pl.'s Supp. Facts. The defendant does not dispute two of the four facts alleged in the plaintiff's Supplement. Def.'s Resp. at 1-2. However, those facts in the plaintiff's Supplement that have not been accepted by the defendant amount to legal argumentation or are not material to this case, and the Court therefore need not consider them.

For its part, the defendant claims that it conducted a reasonable and adequate search for records in response to the plaintiff's FOIA request. Def.'s Mem. at 5-8; Def.'s Opp. at 4. However, the defendant makes no claim that it undertook a comprehensive search of the TECS and ACS databases, nor does it contend that the databases do not contain any information that would be relevant to the plaintiff's request. Rather, the defendant states that it searched the administrative case files for seizure numbers 2003-2704-000743 and 2003-2704-000751,[19] Def.'s Mem., Ex. 1 (Stump Decl.) ¶ 16, that such files contain all pertinent records from the Seized Asset and Case Tracking System ("SEACATS"),[20] which is a module within the TECS database, Def.'s Opp., Ex. 2, Supplemental Declaration of Joanne Roman Stump ("Stump Suppl.") at 2-3, and that the Vaughn indexes submitted by the defendant include records from the SEACATS and ACS databases, Def.'s Opp. at 4. In her supplemental declaration, Ms. Stump states as well that "[i]t is clear from the Vaughn Declaration and Indices . . . that among the responsive records were documents contained within [SEACATS] . . . ." Def.'s Opp., Ex. 2 (Stump Suppl.) at 2. The defendant thus concludes that "[t]here would be no reason to independently search these computer systems for records because such a search would only uncover the same records that have already been obtained from

[19] The defendant's motion for summary judgment states that its FOIA processor, in responding to the plaintiff's FOIA request, "examined the seizure case file for FP&F case number 2003-2704-000603 to find each responsive document," and uncovered fifty such documents. Def.'s Mem. at 7. Because this case concerns seizure case files 2003-2704-000743 and 2003-2704-000751, Compl. ¶¶ 7, 9, and because the defendant states that it examined the relevant seizure case files and found eighty-four responsive documents, the Court presumes that the file designated as having been searched in the defendant's summary judgment motion is a scrivener's error that may be disregarded. Def.'s Mem., Ex. 1 (Stump Decl.) ¶ 16; Def.'s Opp. at 3-4. It need hardly be said that any search of only unrelated case files would be considered inadequate for FOIA purposes.

[20] Specifically, "SEACATS is the system used to track enforcement actions." Def.'s Opp. at 3.

those systems and included in the seizure case file."[21] Id. For the following reasons, the Court cannot determine, based on the declarations and exhibits before it, whether the defendant's search was adequate.

An agency seeking summary judgment in a FOIA action must demonstrate "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). While the agency "has a duty to construe FOIA requests liberally," Wilderness Soc'y v. Dep't of Interior, 344 F. Supp. 2d 1, 20 (D.D.C. 2004) (quoting The Nation Magazine, 71 F.3d at 890), its search "need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request," Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986) (emphasis added). To demonstrate the adequacy of its search, the agency must provide a "reasonably detailed affidavit, setting forth the search terms and type of search performed, and averring that all files likely to contain responsive materials . . . were searched." Friends of Blackwater, 391 F. Supp. 2d at 119 (quoting Oglesby, 920 F.2d at 68); see also Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) (stating that "in the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate [FOIA] compliance").

---

[21] See also Def.'s Opp., Ex. 2 (Stump Suppl.) at 3 ("[C]onducting an independent search of TECS for information located within the SEACATS module would have been unnecessarily repetitive, as it would not have revealed any information related to these particular seizures that was not already included in the administrative seizure files.").

Here, the plaintiff requested "all information relied upon by Customs for the seizure [of its containers, including] manuals, guidelines, directives, etc. [as well as] all records and/or information that proves [the] alleged violations in this case." Def.'s Mem., Ex. C. In response to the plaintiff's FOIA letter, the unidentified FOIA processor at the Los Angeles Office of Fines, Penalties & Forfeitures ("LA FP&F") "examined the seizure case files for FP&F case numbers 2003-2704-000743 and 2003-2704-000751 to find each document that would be responsive to the request." Def.'s Mem., Ex. 1 (Stump Decl.) ¶ 16. This search uncovered eighty-four responsive documents. Id. The defendant states that "[t]he 84 documents do not constitute the entire administrative seizure files for the underlying seizures," but only those documents deemed to be responsive. Def.'s Opp. at 3-4. The defendant, through Ms. Stump's supplemental declaration, further asserts that "[w]hen an administrative seizure case file is created, all records from SEACATS pertaining to the seizure are included in the file for the proper administrative processing of the seizure."[22] Id., Ex. 2 (Stump Suppl.) at 3. Ms. Stump also declares that "[i]t is clear from the Vaughn Declaration and Indices . . . that among the responsive records were documents contained within [SEACATS]," id. at 2, and the defendant's opposition states that the Vaughn indexes "include[] records from the Automated Commercial System (ACS) and the Seized Asset and Case Tracking System," Def.'s Opp. at 4. The defendant also states in its initial memorandum –

[22] In its opposition, the defendant also makes a distinction between the FOIA request process and the process by which the plaintiff is petitioning for relief from administrative forfeiture under 19 U.S.C. § 1618. See note 6, supra. However, the defendant does not allege or otherwise suggest that the "seizure case files" searched pursuant to the plaintiff's FOIA request, Def.'s Mem., Ex. 1 (Stump Decl.) ¶ 16, are any different from the "administrative seizure case file[s]" referenced here in Ms. Stump's supplemental declaration, Def.'s Opp., Ex. 2 (Stump Suppl.) at 3.

although not in its submitted affidavits – that the seizure case files are the place "in which responsive documents are likely to be found." Def.'s Mem. at 7.

The declarations submitted by the CBP are not sufficiently detailed to enable this Court to conclude that the agency's search was adequate. First, while an examination of the "Document Description" column of the Vaughn indexes identifies several documents as being in the ACS database,[23] the Court can find no reference in the indexes to responsive records taken from SEACATS. Ms. Stump's statement that "among the responsive records [listed in the Vaughn indexes] were documents contained within the Seized Asset and Case Tracking System [SEACATS]," Def.'s Opp., Ex. 2 (Stump Suppl.) at 2, thus appears to be indicative, at best, of the defendant's failure to fully annotate its Vaughn indexes or, at worst, of the existence of responsive documents of which the defendant is aware but has not produced.[24]

"[T]here is no requirement that an agency search every record system in response to a FOIA request." Brunetti v. FBI, 357 F. Supp. 2d 97, 103 (D.D.C. 2004) (citing Meeropol, 790 F.2d at 952-53). However, the agency must identify, and search, each record system in which responsive documents are likely to be found. Oglesby, 920 F.2d at 68. In Oglesby, the District of Columbia Circuit found that the Department

[23] Document Numbers 004-007, 029-031, and 052 are listed as bills of lading from the Automated Commercial System database. Def.'s Mem., Exs. A and B (Vaughn indexes).

[24] Of course, a search is not inadequate merely because additional responsive documents have come to light. As the Circuit Court has noted, "[i]t would be unreasonable to expect even the most exhaustive search to uncover every responsive file; what is expected of a law-abiding agency is that it admit and correct error when error is revealed." Meeropol, 790 F.2d at 953; see also Judicial Watch v. Rossotti, 285 F. Supp. 2d 17, 26 (D.D.C. 2003). What troubles the Court in the instant case is the apparent discrepancy between the defendant's statement that the SEACATS database contains responsive records which were put in the administrative seizure file and reflected in the Vaughn indexes, Def.'s Opp., Ex. 2 (Stump Suppl.) at 2, and the Vaughn indexes themselves, which do not identify any documents as being retrieved from SEACATS, see generally Def.'s Mem., Exs. A and B (Vaughn indexes).

of State did not make clear "that the Central Records System is the only possible place that responsive records are likely to be located." Id. (emphasis in original). The Oglesby Court stated that "[a]t the very least, State was required to explain in its affidavit that no other record system was likely to produce responsive documents." Id. Likewise, despite the conclusory representation in its memorandum of law, Def.'s Mem. at 7, Customs has not satisfied this requirement in the present case. The plaintiff names two database systems, TECS and ACS, which it believes may contain information relevant to its FOIA request. Pl.'s Reply at 2-3. The defendant's affidavits do not assert that these systems are unlikely to contain responsive documents; instead, they state that the assigned FOIA officer responded to the plaintiff's request by searching the administrative case files for the seizures in question, Def.'s Mem., Ex. 1 (Stump Decl.) ¶ 16, that all pertinent records from SEACATS, a module of TECS, were put in the administrative seizure files when the files were created, Def.'s Opp., Ex. 2 (Stump Suppl.) at 3, and that the resulting list of responsive documents, provided in the Vaughn indexes, includes records from the SEACATS database, id. at 2-3.[25] However, the defendant's affidavits do not answer the following questions: (1) whether pertinent SEACATS records created after the administrative seizure files were created were placed in those files, if any such records exist; (2) whether all records from the ACS database pertaining to the seizures were placed in the seizure case files;[26] (3) whether

[25] The defendant's affidavits make no mention of the ACS database. See generally Def.'s Mem., Ex. 1 (Stump Decl.); Def.'s Opp., Ex. 1 (Thierry Decl.); Def.'s Opp., Ex. 2 (Stump Suppl.). The defendant's opposition states that the Vaughn indexes contain records originally located within the ACS database. Def.'s Opp. at 4.

[26] Even if the Court accepts on its face the agency's contention that all responsive documents from the administrative seizure file were produced as indicated in the Vaughn indexes, it does not (continued...)

documents concerning the plaintiff are likely to be found in any TECS module other than SEACATS and, if so, whether such documents are likely to be responsive to the plaintiff's FOIA request;[27] and, of course, (4) whether the "responsive records . . . contained within [SEACATS]" mentioned in Ms. Stump's supplemental declaration, Def.'s Opp., Ex. 2 (Stump Suppl.) at 2, are referenced in the Vaughn indexes. Until the defendant has addressed these points, whether through a supplemental declaration, a revised Vaughn index, or a new search,[28] the Court cannot decide the adequacy of the agency's search. See Greenberg, 10 F. Supp. 2d at 19 (requiring Customs to "perform a new search for documents responsive to [the] plaintiffs' FOIA request or to submit a new Vaughn index which describes the search in sufficient detail to allow this Court to evaluate the adequacy of the search").

The FOIA requires an agency defendant to show "beyond material doubt" that it has conducted a search reasonably calculated to uncover all relevant documents, Weisberg v. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983), and on the strength of the present record the Court cannot conclude that the agency has done so here. To avert summary judgment, a plaintiff must therefore "offer some reason to think [the agency] might find a responsive document if it made the effort to conduct a thorough

---

[26](...continued)
necessarily follow that all responsive documents from the ACS database are in the administrative seizure file.

[27] Ms. Stump's statement that "conducting an independent search of TECS for information located within the SEACATS module would have been unnecessarily repetitive" is not responsive to the question whether any TECS modules other than SEACATS are likely to contain relevant information. Def.'s Opp., Ex. 2 (Stump Suppl.) at 3.

[28] Any new search should, of course, be followed by the submission of a supplemental declaration or Vaughn index.

search." Id.; see also Greenberg, 10 F. Supp. 2d at 19 ("If . . . the agency has not made a sufficient showing [that its search was adequate], a requestor can avert a grant of summary judgment by demonstrating some reason to think that the documents would have turned up if the agency had looked for them."). Here, Customs itself raised the possibility of the existence of additional responsive documents by referring conclusively, in its supporting declaration, to "responsive records . . . contained within [SEACATS]."[29] Def.'s Opp., Ex. 2 (Stump Suppl.) at 2. As the Court has noted, an examination of the defendant's Vaughn indexes yields no mention of the SEACATS database. This at least suggests a "positive indication[] of overlooked materials," Valencia-Lucena v. Coast Guard, 180 F.3d 321, 327 (D.C. Cir. 1999) (quoting Founding Church of Scientology v. Nat'l Sec. Agency, 610 F.2d 824, 837 (D.C. Cir. 1979), from which it can be inferred that (1) the SEACATS database may contain responsive documents that are not in the administrative seizure file and were therefore not listed in the Vaughn indexes; (2) the SEACATS database may contain responsive documents that are found in the administrative seizure file but are not listed in the Vaughn indexes; or (3) the SEACATS database may contain responsive documents that are in the administrative seizure file and are listed in the Vaughn indexes, but are not identified as having come from SEACATS. Thus, if the SEACATS documents to which Ms. Stump refers are currently listed in the Vaughn indexes, a revised index should be sufficient to remedy the present deficiency. On the other hand, if the SEACATS documents to which Ms. Stump refers are not currently listed in the Vaughn indexes, it will be necessary for the

---

[29] The plaintiff infers the existence of responsive documents in the TECS and ACS databases, given the purpose of these databases and the plaintiff's status as an importer and alleged violator of laws enforced by Customs. Pl.'s Reply at 2-3.

agency to undertake a new search of the appropriate files and databases. In either case, detailed supplemental declarations should also be submitted answering the questions raised above regarding the adequacy of the search and the likelihood of other responsive documents being found on the SEACATS/TECS and ACS databases.

**B. The Adequacy of the Affidavits**

The defendant's present affidavits are also insufficient because they do not set out "in reasonable detail the scope and method of the search," Perry, 684 F.2d at 127, especially in light of the plaintiff's broad FOIA request. As noted above, the affidavits state simply that the agency processor of the plaintiff's FOIA request at LA FP&F searched the seizure case files "to find each document that would be responsive to the request," which uncovered eighty-four responsive pages. Def.'s Mem., Ex. 1 (Stump Decl.) ¶ 16. The defendant's opposition states that the eighty-four pages of responsive documents "do not constitute the entire administrative seizure files for the underlying seizures." Def.'s Opp. at 3-4. The affidavits, however, provide no basis for the Court to understand how a document could be in the seizure case files and not fall within the bounds of the plaintiff's request for "all information relied upon by Customs for the seizure[, including] manuals, guidelines, directives, etc. [as well as] all records and/or information that proves [the] alleged violations in this case." Def.'s Mem., Ex. C (FOIA request). There may be many plausible explanations for how the agency distinguished between responsive and non-responsive documents that are in the seizure case files; however, the defendant has not provided one. Nor are the explanations intuitive, because among the eighty-four records deemed to be responsive are such documents as an "Attachment Cover Sheet" (Documents 009, 016-017, 020, and 027-028, all

ultimately released without redaction), a "Facsimile Transmission Verification Report" (Document 012, released partially redacted), and a "Facsimile Cover Sheet" (Document 026, released partially redacted).[30] Def's Mem., Ex. A (Vaughn index). It is difficult for this Court to conceive of criteria that would denote cover sheets and fax transmission reports as responsive to the plaintiff's request – that is, as "information relied upon by Customs" or "records and/or information that proves [the] alleged violations" – while excluding any other documents that are in the administrative seizure file. Agency affidavits must "provide information specific enough to enable [the requester] to challenge the procedures utilized." Piper v. Dep't of Justice, 294 F. Supp. 2d 16, 23 (D.D.C. 2003) (quoting Steinberg v. Dep't of Justice, 23 F.3d 548, 552 (D.C. Cir. 1994). The defendant's affidavits do not do this, and the Court therefore concludes that the defendant must either undertake a new search of the seizure case files and any other locations likely to contain responsive records or submit a supplemental declaration describing in substantially greater detail the procedure by which the FOIA processor at Customs responded to the plaintiff's FOIA request. See Gallace v. Dep't of Agriculture, 273 F. Supp. 2d 53, 60 (D.D.C. 2003) (finding an adequate search where "[t]he FOIA Officer's declarations show in detail her process for searching for responsive documents, including how she determined which files needed to be searched, whose files were actually searched and by whom, and what criteria were used for searching").

Finally, the Court is aware that other District Judges in this Circuit have recently addressed FOIA challenges brought against Customs that raised nearly identical issues

---

[30] The Court does not inquire why these eight pages were among the documents not only deemed responsive, but withheld in full following the initial search of the seizure case files by the FOIA processor assigned to respond to the plaintiff's FOIA request.

regarding the adequacy of the agency's searches. Changzhou Laosan Group v. Customs and Border Protection, 2005 WL 913268, partially vacated on other grounds, 374 F. Supp 2d 129 (D.D.C. 2005) (04-1919 (ESH)); Delta Limited v. Customs and Border Protection, 384 F. Supp. 2d 138, partially vacated on other grounds, 393 F. Supp. 2d 15 (D.D.C. 2005) (04-2106 (RCL)); Suzhou Yuanda Enterprise Co. v. Customs and Border Protection, ___ F. Supp. 2d ____, 2005 WL 3273945 (D.D.C. 2005) (04-2111 (RJL)); Newry Limited v. Customs and Border Protection, 2005 WL 3273975 (D.D.C. 2005) (04-2110 (HHK)). The District Court in each case found that the searches conducted by Customs in response to the plaintiffs' FOIA requests were adequate and the declarations sufficiently detailed.[31] Changzhaou, 2005 WL 913268 at *2-3; Delta Limited, 384 F. Supp. 2d at 144-45; Suzhou, 2005 WL 3273945 at *1; Newry Limited, 2005 WL 3273975 at *2. None of those cases, however, present the particular set of facts and arguments presented in this case, and the adequacy of an agency search under the FOIA "is a matter dependent upon the circumstances of the case." Friends of Blackwater, 391 F. Supp 2d. at 119 (quoting Founding Church of Scientology, 610 F.2d at 834).

## IV. Conclusion

For the foregoing reasons, this Court concludes that neither party is entitled to judgment as a matter of law at this time. Accordingly, the Court denies both parties' motions for summary judgment without prejudice and directs the defendant to remedy the above-stated deficiencies in its factual submissions no later than thirty days from

[31] In Suzhou, the plaintiff did not challenge the adequacy of the search, but the Court nonetheless made a factual determination, relying on the defendant's declaration, that Customs' search was adequate. 2005 WL 3273945 at *1.

the date of this order. If the defendant instead believes it necessary to undertake an additional search for documents pursuant to the plaintiff's FOIA request, it must do so no later than sixty days from the date of this order. Owing to the possibility that the defendant will be uncovering additional responsive records in a new search of the administrative seizure files, the ACS database, and the SEACATS/TECS database, the Court will defer ruling on whether the defendant properly withheld part or all of responsive documents and whether the defendant has disclosed all reasonably segregable portions of the records. After the defendant has filed its revised Vaughn index and any additional declarations, either party may file a renewed motion for summary judgment.[32] If the defendant determines that a new search is necessary, the parties may rebrief the case after any such search has been completed.

**SO ORDERED** this 23rd day of January, 2006.[33]

REGGIE B. WALTON
United States District Judge

---

[32] As stated above, the Court is well aware that the defendant has litigated, and is currently litigating, a number of cases in this Circuit with substantially similar legal arguments and factual circumstances. While the holdings of the District Judges in those cases are not binding on this Court, their reasoning is nonetheless in the main extremely persuasive. Accordingly, the Court strongly encourages the parties to be mindful of the disposition of those similar cases when providing further rebriefing in this case. See, e.g., Delta Limited, 393 F. Supp. 2d at 17-18.

[33] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.