# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| NYC APPAREL FZE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-2105 (RBW) |
| ) | |
| U.S. CUSTOMS AND BORDER ) | |
| PROTECTION, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

## <u>MEMORANDUM OPINION</u>

The plaintiff has filed this lawsuit seeking disclosure of certain records requested pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522 <u>et. seq.</u> (2000). On January 23, 2006, the Court issued a Memorandum Opinion and Order denying without prejudice both parties' motions for summary judgment and directing the defendant to supplement the record and, if necessary, to undertake a new search pursuant to the plaintiff's FOIA request in order to remedy deficiencies identified in its initial factual submissions.  Order at 1; <u>see also</u> Memorandum Opinion ("Opinion") at 9-19 (detailing deficiencies).  The defendant has now addressed those deficiences to the Court's satisfaction.  Defendant's Motion for Summary Judgment ("Def.'s Mot."), Declaration of Shari Suzuki ("Suzuki Decl.") ¶¶ 23-32 (responding to the Court's queries);[1] see also Memorandum of Points and Authorities in Support of Defendant's Renewed Motion for Summary Judgment ("Def.'s Mem.") at 10-15 (same).  Currently before the Court are

_____

[1]  Ms. Suzuki is the FOIA Officer and Branch Chief of the FOIA Appeals, Policy and Litigation Branch, Regulations and Disclosure Law Division, Office of Regulations and Rulings for Customs.  Suzuki Decl. ¶ 1.

the parties' renewed cross-motions for summary judgment.[2]  Plaintiff's Motion for Summary

Judgment ("Pl.'s Mot."); Def.'s Mot.  For the reasons set forth below, the Court grants the

defendant's  motion for summary judgment and denies the plaintiff's motion.

## I.   Background

The facts of this case have been fully recited in the Court's previous Memorandum Opinion.

See Opinion at 1-6.  However, it is helpful to review them briefly as they relate to the motions

currently before the Court.  The following facts are undisputed.

The plaintiff, NYC Apparel FZE ("NYC Apparel"), an exporter of merchandise from the

United Arab Emirates ("UAE"), Compl. ¶ 3, claims to have entered into an agreement to ship

merchandise from the UAE to Mexico by way of Los Angeles, California.  Id.  On July 9, 2003, the

defendant, the U.S. Customs and Border Protection ("Customs"), seized a container being shipped

by the plaintiff through the Los Angeles-Long Beach Seaport and assigned to it Seizure Number

2003-2704-000743.  Def.'s Mot., Second Declaration of Robert P. Thierry ("Thierry Decl. II") ¶¶

3-5;[3] Compl. ¶ 7.  On July 12, 2003, Customs seized another container being shipped by the

_____

[2]  The following papers have been submitted in connection with these motions: (1) Plaintiff's Renewed
Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Mem."); (2)
Plaintiff's Renewed Supplement of Material Facts Not in Genuine Dispute ("Pl.'s Stmt."); (3) Defendant's
Opposition to Plaintiff's Renewed Motion for Summary Judgment ("Def.'s Opp."); (4) Plaintiff's Reply to
Defendant's Opposition to Plaintiff's Renewed Motion for Summary Judgment ("Pl.'s Reply"); (5) Def.'s Mem.; (6)
Defendant's Renewed Statement of Material Facts Not in Dispute ("Def.'s Stmt."); (7) Memorandum of Points and
Authorities in Support of Plaintiff's Opposition to Defendant's Renewed Motion for Summary Judgment ("Pl.'s
Opp.").

In addition, the Court periodically refers throughout this opinion to the following papers submitted in
connection with the parties' original cross-motions for summary judgment: (1) Memorandum of Points and
Authorities in Support of the Defendant's [First] Motion for Summary Judgment ("Def.'s First Mem."); (2)
Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion for Summary
Judgment and Plaintiff's Cross Motion for Summary Judgment ("Pl.'s First Mem."); (3) Defendant's Opposition to
Plaintiff's Cross Motion for Summary Judgment and Reply to Plaintiff's Opposition to Defendant's Motion for
Summary Judgment ("Def.'s First Reply"); and (4) Plaintiff's Reply to Defendant's Opposition to Plaintiff's
Cross-Motion for Summary Judgment ("Pl.'s First Reply").

[3]  The  Court's earlier Memorandum Opinion noted that the complaint states that this seizure occurred on July 12,
2003. Opinion at 2 (citing Compl. ¶ 7).  However, the seizure notice issued to the plaintiff's counsel on October 1,
2003, corroborates Robert Thierry's declaration, which indicates that Seizure Number 2003-274-000743 occurred on
July 9, 2003.  See Pl.'s First Mem., Ex. B (seizure notice) at 1; Thierry Decl. II ¶ 4.

plaintiff through the Los Angeles-Long Beach Seaport, assigning to it Seizure Number 2003-2704-000751.  Thierry Decl. II ¶¶ 6-8; Pl.'s First Mem., Ex. B (seizure notice) at 1.  According to Customs, both shipments were illegal imports bound not to Mexico but to El Paso, Texas.  Thierry Decl. II ¶¶ 4, 7; Pl.'s First Mem., Ex. B (seizure notice) at 1.

On September 3, 2003, the plaintiff's counsel sent two letters to Customs' Port Director at the Los Angeles-Long Beach Seaport, requesting, pursuant to the FOIA, all information pertaining to the seizure of the two containers.  Compl. ¶ 9; Def.'s First Mem., Ex. C (FOIA request); Def.'s Stmt. ¶ 1.  Specifically, the letters stated that the plaintiff sought "all information relied upon by Customs" in connection with the seizures, including "the manuals, guidelines, directives, etc. relied upon by Customs" and "all records and/or information that proves [the] alleged violations in this case."  Def.'s First Mem., Ex. C (FOIA request).

On December 19, 2003, Customs' Port Director informed the plaintiff's counsel by letter that a search of the seizure case files had been conducted, that eighty-four pages of documents had been determined to be responsive to the plaintiff's request, and that all responsive documents were exempt from release under the FOIA and were being withheld in their entirety.[4]  Compl. ¶ 19; Def.'s First Mem., Ex. J (letter from Customs to the plaintiff's counsel, dated December 19, 2003); Def.'s Stmt. ¶ 9.  The plaintiff appealed the decision to Customs' FOIA Appeals Officer on January 6, 2004.  Compl. ¶ 20; Def.'s First Mem., Ex. K (FOIA appeal); Def.'s Stmt. ¶ 10; Suzuki Decl. ¶ 15.  The plaintiff then filed its complaint in this case on December 3, 2004, stating that "pursuant to 5 U.S.C. § 522(a)(6)(C), the failure of Customs to respond to the [FOIA] appeal within the time

---

[4]  The eighty-four pages of documents were withheld pursuant to the FOIA exemptions (b)(2), (b)(4), and (b)(5).  Def.'s First Mem., Ex. 1 (Declaration of Joanne Roman Stump) ("Stump Decl.") ¶ 16 and Ex. J (letter from Customs to the plaintiff's counsel, dated December 19, 2004) at 1; Def.'s Stmt. ¶ 9 and Suzuki Decl. ¶ 14.

prescribed by law constitutes a deemed denial" and also the exhaustion of the plaintiff's

administrative remedies.  Compl. ¶ 25.

      By letter dated February 23, 2005, Joanne Roman Stump, Customs' FOIA Appeals Officer

in charge of the plaintiff's appeal, affirmed in part the decision of Customs' Los Angeles Port

Director.[5]  Def.'s Stmt. ¶ 11; Pl.'s Stmt. ¶ 2; Suzuki Decl. ¶ 16.  Upon review of the record, Ms.

Stump determined that the plaintiff was a "third-party FOIA requester . . . [who] is not entitled to

get information which is submitted to [Customs] by business submitters as part of the public

disclosure that occurs when a FOIA request is processed," but that it was nevertheless appropriate

to release thirty-five pages of responsive documents to the plaintiff with redactions pursuant to

FOIA exemptions (b)(2), (b)(4), (b)(6), (b)(7)(C), and (b)(7)(E).  Def.'s First Mem., Ex. L (letter

from Customs to the plaintiff's counsel, dated February 23, 2005) at 2; see also Suzuki Decl. ¶¶ 16,

21; Def.'s First Mem, Ex. 1 (Declaration of Joanne Roman Stump) ("Stump Decl.") ¶¶ 15, 17;

Def.'s Stmt. ¶ 11; Pl.'s Stmt. ¶ 2.  Ms. Stump further informed the plaintiff that nineteen other

pages of responsive documents were to be withheld in full pursuant to FOIA exemptions (b)(2),

(b)(4), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(E).  Def.'s Stmt. ¶ 11; Suzuki Decl. ¶¶ 16, 21.

The remaining thirty pages of the eighty-four pages of responsive documents discovered in the

seizure files by Customs were duplicates of pages that had been partially released or withheld in

their entirety.  Id.

      After sending the February 23, 2005 letter to the plaintiff, Customs filed a motion for

summary judgment along with two indexes produced pursuant to Vaughn v. Rosen, 484 F.2d 820,

---

      [5] Ms. Stump is the FOIA Appeals Officer and Branch Chief of the Disclosure Law Branch, International Trade
      Compliance Division, Office of Regulations and Rulings for Customs.  Stump Decl. ¶ 1.  She is responsible for "(1)
      reviewing initial FOIA decisions that are subject to administrative appeal; (2) giving guidance and instructions to
      CBP personnel regarding the processing of FOIA and Privacy Act requests; (3) adjudicating administrative appeals
      that concern FOIA and Privacy Act requests; and (4) overseeing all CBP activities related to information disclosure."
      Id.

827 (D.C. Cir. 1973).  The defendant contended in its motion that its search was adequate to discover all responsive documents, Def.'s First Mem. at 5-8, that it had properly withheld all or part of the responsive documents pursuant to the FOIA exemptions (b)(2), (b)(4), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(E), id. at 8-25, and that it had disclosed all reasonably segregable portions of the documents, id. at 25-26.  The plaintiff, by contrast, contended that the defendant's search was not adequate, Pl.'s First Reply at 2-3, that the documents that were discovered had been improperly redacted or withheld under exemptions (b)(2), (b)(4), (b)(5), and (b)(7)(A), Pl.'s First Mem. at 3-9, and that the defendant had not disclosed all reasonably segregable information, id.[6]

In response to the Court's January 23, 2006 order denying without prejudice both parties' summary judgment motions, Customs undertook an additional search of its databases for documents responsive to the plaintiff's FOIA request.  Def.'s Mem. at 9-11; Suzuki Decl. ¶¶ 23-27.  As a result of this new search, Customs located ten additional pages of responsive documents, five which were disclosed to the plaintiff and five which were withheld in full.[7]  Def.'s Mem. at 10; Suzuki Decl. ¶ 26; Supplemental Declaration of Shari Suzuki ("Suzuki Supp. Decl.") ¶¶ 4-9 (discussing newly located documents withheld in full); see also Def.'s Mem., Exs. B (Vaughn index of documents withheld in full) and N (responsive pages disclosed to plaintiff).  Customs also disclosed four redacted printouts from the Seized Asset and Case Tracking System ("SEACATS") database that it determined to be "associated with the two pertinent seizures," Suzuki Decl. ¶ 26,

---

[6]  The plaintiff did not contest the defendant's withholdings under FOIA exemptions (b)(6), (b)(7)(C), and (b)(7)(E). Pl.'s First Mem. at 8, 9.  Accordingly, the Court did not address whether it was proper for Customs to withhold or redact information under these exemptions.  This includes information contained in Document Numbers 001-003, 010-015, 018-019, 021-026, and 033-035, which were released to the plaintiff partially redacted, and Document Numbers 036, 038-040, and 054, which were withheld in full pursuant to several FOIA exemptions.  Pl.'s First Mem., Exs. A & B (Vaughn indexes).  All documents other than Document Number 012 were withheld or redacted based, at least in part, on exemptions other than (b)(6), (b)(7)(C), and (b)(7)(E).  Id.

[7]  The five pages withheld in full were primarily withheld pursuant to FOIA exemption (b)(5).  Suzuki Supp. Decl. ¶ 6.  In addition, Customs contends that FOIA exemptions (b)(2), (b)(4), (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(E) also apply to these documents.  Id. ¶ 5.

although it did "not consider these records as necessarily 'responsive' to [the] [p]laintiff's FOIA

request," id. ¶¶ 26-27; see also Def.'s Mem. at 9-10.  Customs now contends that "all records that

are responsive to [the] [p]laintiff's request for . . . information 'relied upon' by [Customs] or

considered 'proof' . . . has been identified, reviewed, and as appropriate released or withheld by

[the] [d]efendant."  Def.'s Mem. at 11.  The parties thus renew their requests for summary

judgment.[8]  Def.'s Mem.; Pl.'s Mem.

## II. Standard of Review

Courts will grant a motion for summary judgment if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[8] In its reply to Customs' opposition to its motion for summary judgment, the plaintiff appears to abandon its argument that the defendant incorrectly applied FOIA exemption (b)(7)(A).  Pl.'s Reply at 3.  Exemption (b)(7)(A) provides that an agency does not need to disclose "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A); see Def.'s Mem. at 30-31 (providing legal standard for determining applicability of (b)(7)(A) exemption).  The defendant argues that the application of Exemption (b)(7)(A) was proper in this instance because it "withheld information . . . that was gathered and compiled during the investigation of the suspected illegal activities of a third party or parties."  Def.'s Mem. at 31 (citation omitted).  The defendant further asserts that "[d]isclosing this information could identify and alert the suspect(s) of the investigation [of] its details, including sources of information, potential witnesses, and the nature of the evidence that has been identified and collected in the investigation."  Id.

The plaintiff initially contended that "[t]here [was] an ambiguity in [the defendant's assertion of Exemption (b)(7)(A)]" and "request[ed] a declaration from the defendant that the names of suspects and/or witnesses as well as evidence collected during the investigation that supports Customs' case concerning the suspected [criminal] scheme . . . had no relation to the seizure of NYC Apparel's merchandise and subsequent petition denials."  Pl.'s Mem. at 10; Pl.'s Opp. at 5 (internal quotation marks omitted).  The defendant responded that "[the] information certainly did support [the] [d]efendant's case leading to seizure of the merchandise, even though the investigation focused on parties other than [the] [p]laintiff," but that "[the] [p]laintiff's precise involvement in the [criminal scheme under investigation] is not material to the FOIA litigation."  Def.'s Opp. at 17-18.  In reply, the plaintiff states simply that "[i]t would certainly have been helpful . . . when arguing its innocent owner defense [in the related administrative forfeiture proceedings for it to know] that it was not the focus of [the] defendant's investigation.  The use of this exemption by the defendant led directly to the forfeiture of [the] plaintiff's merchandise."  Pl.'s Reply at 3.  Notably, at no point has the plaintiff provided any specific argumentation or case law in support of its contention that the defendant did not properly invoke Exemption (b)(7)(A).  See Pl.'s Mem.; Pl.'s Opp.; Pl.'s Reply.  Rather, the plaintiff's comments regarding Exemption (b)(7)(A) are couched more as a request for clarification, which it apparently received to its satisfaction in the defendant's opposition to its motion for summary judgment.  See Pl.'s Reply at 3.  The Court therefore concludes that, to the extent the plaintiff argued in its motion for summary judgment that the defendant did not properly invoke Exemption (b)(7)(A), such an argument has now been abandoned.  In any event, because "conclusory allegations unsupported by factual data will not create a triable issue of fact," the plaintiff has clearly failed to refute, nor even attempted to rebut, the defendant's argument that it is entitled to summary judgment on the question of the applicability of Exemption (b)(7)(A).  Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) (internal quotation marks and citations omitted).

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling on a Rule 56(c) motion, the Court must view the evidence in the light most favorable to the non-moving party.  Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)).  The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true.  Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).  The non-moving party, however, cannot rely on "mere allegations or denials."  Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248) (quotation marks omitted).  Thus, "conclusory allegations unsupported by factual data will not create a triable issue of fact." Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) (internal quotation marks and citations omitted).  If the Court concludes that "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Moreover, "in ruling on cross-motions for summary judgment, the [C]ourt shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed."  Shays v. FEC, 424 F. Supp. 2d 100, 109 (D.D.C. 2006) (citation omitted).

"[The] FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions."  Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (citation omitted).  In a FOIA action, the defendant agency has "[the] burden of demonstrating that the withheld documents [requested by the FOIA requester] are exempt from disclosure."  Boyd v. Dep't of Justice, 475 F. 3d 381, 385 (D.C. Cir. 2007) (citation omitted).  The Court will grant summary judgment to the government in a

FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Friends of Blackwater v. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (internal quotation marks and citations omitted). To satisfy its burden and prove that it has fully discharged its FOIA obligations, a defendant agency typically submits a Vaughn index, which provides "a relatively detailed justification" for each withheld document, "specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of [the] withheld document to which they apply." King v. Dep't of Justice, 830 F.2d 210, 219 (D.C. Cir. 1987) (internal quotation marks and footnote omitted); see also Vaughn, 484 F.2d at 827. Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt [from disclosure]." Students Against Genocide, 257 F.3d at 833 (internal quotation marks and citation omitted).

### III. Analysis

#### A. The Adequacy of the Search

The plaintiff argues that the defendant's search was not reasonable or adequate because Customs did not search its Automated Manifest System ("AMS") for the plaintiff's name as a "shipper" and because an adequate search would have found the plaintiff's name in Customs' "law enforcement systems." Pl.'s Reply at 1-2. The defendant asserts that its search did fulfill the FOIA's requirements because "it was reasonable . . . to search for responsive information by looking within the administrative seizure files . . . the SEACATS database and the Fines, Penalties

8

and Forfeiture files." Def.'s Mem. at 9. For the following reasons, the Court agrees with the defendant.

An agency that is responding to a FOIA request must make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Baker & Hostetler LLP v. Dep't of Commerce, 473 F.3d 312, 318 (D.C. Cir. 2006) (internal quotation marks and citation omitted). The search "need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the [plaintiff's] specific request." Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986) (emphasis added). The agency must demonstrate the adequacy of its search by providing a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).

According to the defendant, the majority of documents it "relied upon" in making an administrative seizure are located in the administrative seizure file, the SEACATS database, and the Fines, Penalties and Forfeitures ("FP&F") file. Suzuki Decl. ¶ 18. During Customs' investigation of a possible seizure, agency officers create an "administrative seizure case file." Id. After a seizure is approved, Customs enters the information contained in the case file into SEACATS and generates an FP&F number. Id. SEACATS can be searched with the FP&F case number or with the name of the "violator." Id. SEACATS also contains information that was entered after the administrative seizure—and therefore would not have been "relied upon" by Customs in making its initial seizure determination—due to the fact that the administrative seizure file and SEACATS are updated continually until the close of the seizure case. Id. ¶¶ 24-25.

Additional information may be located in the Treasury Enforcement Communications System ("TECS") and the Automated Commercial System ("ACS"). Both are general commercial

databases.  TECS, like SEACATS, can also be searched with the name of a "violator."  Id. ¶ 26.

ACS is searchable only with an importer's name, unique identification number, or address.  Id. ¶

27.  Certain information from the ACS may also be located in the administrative seizure file.  Id. ¶

18.

Here, most of the information that is responsive to the plaintiff's specific requests existed in

the administrative seizure case files for the plaintiff's case, which the defendant searched.  Def.'s

Mem. at 9 (citing Suzuki Decl. ¶¶ 17-18).  The defendant also searched the FP&F files with the

FP&F numbers provided by the plaintiff, and SEACATS, the ACS, and the TECS module, all with

the plaintiff's name.  Suzuki Decl. ¶¶ 26, 27, 30.  The defendant indicates that the SEACATS,

TECS, and ACS databases, as well as the FP&F system, are the only record systems reasonably

likely to contain information regarding the administrative seizure of the plaintiff's merchandise,

and that those are therefore the only databases that need to be searched.  Def.'s  Mem. at 9-10

(citing Suzuki Decl. ¶¶ 14-15, 26-27); see Def.'s Opp. at 4.  The Court thus finds that Customs has

satisfied the requirement that an agency "explain in its affidavit that no other record system was

likely to produce responsive documents."  Oglesby, 920 F.2d at 68.

The plaintiff contends that Customs "still has not searched its Automated Manifest System

["AMS"] wherein the plaintiff's name would have appeared as a shipper."  Pl.'s Reply at 1-2.

However, the plaintiff provides no evidence that the AMS is likely to contain any information

whatsoever pertaining to the seizure of its containers, much less any information responsive to the

plaintiff's FOIA request.  See Def.'s First Mem., Ex. C (FOIA request) (seeking "all information

relied upon by Customs" in connection with the seizures, including "the manuals, guidelines,

directives, etc. relied upon by Customs" and "all records and/or information that proves [the]

alleged violations in this case").  Rather, it simply states that the AMS "is apparently available to

10

the public and includes the names and addresses of shippers." Pl.'s Opp. at 2 (citation omitted).

This vague description of what appears to be an entirely irrelevant automated database indicates, at

most, that the plaintiff's name—divorced from any of the events associated with this

litigation—might possibly be found within the AMS.  There is absolutely no indication that

Customs would have "relied upon" this information, or any other information in the AMS, when

determining whether or not to make an administrative seizure of the plaintiff's goods.  See Def.'s

Mem. at 9-10.  Indeed, Customs states that the "files and databases specifically created to document

administrative seizures by the agency . . . are the places were information about the seizure

reasonably will be found."  Def.'s Opp. at 4.  Moreover, "[a] reasonably calculated search does not

require that an agency search every file where a document could possibly exist, but rather requires

that the search be reasonable in light of the totality of the circumstances."  Cooper v. Dep't of

Justice, No. 03-5172, 2004 WL 895748, at *1 (D.C. Cir. Apr. 23, 2004) (citation omitted); see also

Hornbostel v. Dep't of the Interior, 305 F. Supp. 2d 21, 28 (D.D.C. 2003) (observing that "the focus

of the adequacy inquiry is not on the results").  The Court therefore concludes that the defendant

did not need to search the AMS in order to conduct a reasonable and adequate search.

Additionally, the plaintiff's claim that the search was not adequate because its name should

"appear in defendant's law enforcement systems" exceeds the requirements of the FOIA.  "The fact

that there may possibly be additional documents relating to [the FOIA request] is not relevant to the

question of whether [the] defendant conducted an adequate search for the documents."  Hornbostel,

305 F. Supp. 2d at 27 (citation omitted); see also Servicemembers Legal Defense Network v. Dep't

of Defense, Civ. No. 06-200, 2007 WL 79442, at * 5  (D.D.C. Jan. 12, 2007) (stating that the

defendant's "belief that other documents may exist does not make the search inadequate") (citing

Meeropol, 790 F.2d at 952-53).  Here, Customs conducted an "adequate" search when it searched

11

the databases that were relevant to the administrative seizure.  The possible existence of other documents does not change the fact that these databases were the most "reasonable" places to search for documents relevant to the plaintiff's request.  Indeed, other members of this Court have held that nearly identical searches were reasonable and adequate.  See, e.g. Newry Ltd. v. U.S. Customs and Border Prot. Bureau, Civ. No. 04-02110, 2005 WL 3273975, at *2 (D.D.C. July 29, 2005); Suzhou Yuanda Enterprise v. U.S. Customs and Border Prot. Bureau, 404 F. Supp. 2d 9, 12 (D.D.C. 2005); Changzhou Laosan Group v. U.S. Customs and Border Prot. Bureau, Civ. No. 04-1919, 2005 WL 913268, at *3 (D.D.C. Apr. 20, 2005).[9]   For these reasons, the Court concludes that the search conducted by the defendant was both reasonable and adequate.

**B. The FOIA Exemptions**

*1. Information Allegedly in the Public Domain*

The plaintiff argues that Customs waived its right to withhold certain entry documents because Customs was already required by federal regulation to release the information contained within them.[10]  See Pl.'s  Mem. at 7; Pl.'s Reply at 2 (citing 19 C.F.R. § 103.31(e) (2006)).  The documents in question are bill of lading screen prints from Customs' Automated Commercial

---

[9]   Like the present case, each of these cases involved a FOIA request by the plaintiffs for all information "relied upon" by Customs in making its determination to effect an administrative seizure of an allegedly fraudulent shipment of goods.  Newry Ltd., 2005 WL 3273975, at *1; Suzhou Yuanda Enter., 404 F. Supp. 2d at 11; Changzhou Laosan Group, 2005 WL 913268, at *1; see also Delta Ltd. v. U.S. Customs and Border Prot. Bureau, 393 F. Supp. 2d 15, 17 (D.D.C. 2005).

[10]   The plaintiff asserts that document numbers 1, 3-8, 10, 11, 13, 14, 18, 19, 21-26, 29-33, 35, 36, 37, and 41-45 should be released entirely because the information they contain is in the public domain.  Pl.'s  Mem. at 7.  The plaintiff also argues that documents withheld under both exemption (b)(2) and exemption (b)(4) should be released due to a public domain waiver.  See Pl.'s  Reply at 2 (exemption (b)(2)); Pl.'s  Mem. at 7 (exemption (b)(4)).  Whether or not the defendant properly applied exemptions (b)(2) and (b)(4) to these documents is discussed below.  See infra parts III.B.ii-iii.

System,[11] correspondence between Customs and a third party,[12] internal agency memos and forms,[13] and Customs Form 7512, which shippers fill out to facilitate the entry of goods into the United States and the goods' subsequent transportation.[14]  The plaintiff asserts that the information in these documents has been released to the public through Customs' website and the Port Import Export Reporting Service ("PIERS"), and that therefore the defendant's application of certain FOIA exemptions is improper.  See Pl.'s Reply at 2; Pl.'s Mem. at 7.[15]  The defendant responds that although certain related entry information is publicly available, it is not identical to the information contained in the withheld documents.  Def.'s Opp. at 7 ("Although PIERS may contain some information that was withheld on documents during this process, PIERS does not contain the information from these specific FOIA documents or in the way presented by the withheld documents.");[16] Supplemental Declaration of Joanne Roman Stump ("Stump Supp.") ¶ 7 ("PIERS

---

[11]  Documents 1, 3-8, and 29-31.  Def.'s Mem., Ex. A.

[12]  Documents 11, 13, 14, 18-19, and 21-26.  Def.'s Mem., Ex. A.

[13]  Documents 23, 33, 35. Def.'s Mem., Ex. A, and 36, Def.'s Mem., Ex. B.

[14]  Documents 41-54.  Def.'s Mem., Ex. B.

[15]  The plaintiff references 19 C.F.R. § 103.31(e) with respect to both exemption (b)(2) and exemption (b)(4).  See Pl.'s Reply at 2 (arguing that documents were improperly withheld under exemption (b)(2) because "19 C.F.R. § 103.31(e)(3)(1-22) provides specific information relating to the plaintiff's shipment of merchandise . . . While the documents such as the 7512s and manifests are probably not in the public domain, the information contained in these documents is in the public domain"); Pl.'s Mem. at 7 (arguing that Customs improperly applied exemption (b)(4) to its entry documents because "pursuant to 19 C.F.R. § 103.31, there are commercial services that provide specific manifest information . . . [and] [o]ne of these is PIERS.").  The defendant, for its part, addresses this argument in an introductory discussion of the FOIA exemptions.  See Def.'s Opp. at 7.  For the sake of simplicity, the Court considers the plaintiff's argument about the public domain in a section separate from the specific exemption discussions.

[16]  The defendant also argues that the plaintiff's FOIA request should be dismissed "to the extent [that] the plaintiff seeks . . . manifest data."  Def.'s Opp. at 8 n.2.  The defendant states that manifest data is publicly available on magnetic tape for a fee, pursuant to 19 C.F.R. § 103.31(e), and therefore the plaintiff can access this information independently from its FOIA request.  Id.  The Court agrees that "an agency 'need not respond to a FOIA request for copies of documents where the agency itself has provided an alternative form of access.'"  Martinez v. Bureau of Prisons, 444 F.3d 620, 624 (D.C. Cir. 2006) (quoting Oglesby, 920 F.2d at 70) (holding that an agency did not need to respond to a FOIA request where the documents were already available in a reading room); see also Tax Analysts v. Dep't of Justice, 845 F.2d 1060, 1062 (D.C. Cir.1988), aff'd, 492 U.S. 136 (1989) (documents available in public reading room).  However, the Court disagrees with Customs' characterization of the plaintiff's request as one for available "manifest data."  The plaintiff has requested all information "relied upon" by Customs in making its determination to seize its goods.  Def.'s First Mem., Ex. C (FOIA request).  While some of the information "relied

value-adds to the government data, thus creating a non-government record."). The Court agrees

with the defendant that the information requested by the plaintiff was not released to the public in

such a way that withholding under a FOIA exemption would be improper.

The law in this area precludes an agency from withholding documents that are relevant to a

FOIA request when those documents have already been disclosed to the public. See, e.g. Wolf v.

CIA, 473 F.3d 370, 378 (D.C. Cir. 2007); Pub. Citizen v. Dep't of State, 276 F.3d 634, 645 (D.C.

Cir. 2002); Cottone v. Reno, 193 F.3d 550, 554 (D.C. Cir. 1999) ("Under our public domain

doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak

once disclosed and preserved in a permanent public record.") (citing Niagara Mohawk Power Corp.

v. Dep't of Energy, 169 F.3d 16, 19 (D.C. Cir. 1999) (exemption (b)(4)); Pub. Citizen v. Dep't of

State, 11 F.3d 198, 201-03 (D.C. Cir. 1993) (exemption 1); Afshar v. Dep't of State, 702 F.2d 1125,

1130-34 (D.C. Cir. 1983) (exemptions 1 and 3)) (additional citation omitted)). The burden of

proving that withheld information is already in the public domain rests with the plaintiff, who must

"point[] to specific information in the public domain that appears to duplicate that being withheld."

Wolf, 473 F.3d at 378 (internal quotation marks and citation omitted). Therefore, "[p]rior

disclosure of similar information does not suffice; instead, the specific information sought by the

plaintiff must already be in the public domain by official disclosure." Id. (emphasis added)

(citation omitted). Here, with respect to the bill of lading screen prints, correspondence, and

internal agency memos and forms, the plaintiff has failed to identify any "specific information" in

the public domain that might "duplicate" the information that was withheld. See Pl.'s Mem. at 7-8;

---

 upon" may have been manifest data that is publicly available, the plaintiff cannot be expected to determine
specifically what manifest data this was. Moreover, Customs itself argues that the documents that are relevant to the
plaintiff's FOIA request are not the same as those in the public domain. Def.'s Opp. at 7. Therefore, based on
Customs' own characterization of the responsive documents, the plaintiff cannot be said to have a method of
independent access that would satisfy this part of the plaintiff's request.

Pl.'s Reply at 2.[17]   The Court therefore concludes that these documents were not previously released into the public domain.

With respect to the customs entry forms and manifest documents, the plaintiff refers to specific information, contained in PIERS and on the Customs website, which allegedly constitutes public disclosure of the information on these forms.  Pl.'s Mem. at 7; Pl.'s Reply at 2.  However, as already noted, the fact that information contained in the public documents is similar to that in the withheld documents does not call for a conclusion that this information is duplicative.  See Pub. Citizen, 11 F.3d at 201 ("FOIA plaintiffs cannot simply show that similar information has been released, but must establish that a specific fact already has been placed in the public domain.") (citation omitted).  The plaintiff's assertion that the information contained in  "the documents such as the [Customs Form] 7512s and [entry] manifests" is in the public domain, even if the documents themselves are not, Pl.'s Reply at 2, is insufficient to sustain the burden of production it shoulders.  See Pub. Citizen, 276 F.3d at 645 (stating that "a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld") (internal citation and quotation marks omitted); Gilda Indus. v. U.S. Customs and Border Prot. Bureau, 457 F. Supp. 2d 6, 12 (D.D.C. 2006) (holding that the PIERS database did not contain a "permanent public record of the exact" customs information sought by the plaintiff and that no public domain waiver applied).  The Court therefore concludes that Customs did not waive its ability to apply the FOIA exemptions through prior release of the material to the public.

---

[17]   The plaintiff references only public "manifest information," stating that "the duplicate information being withheld was released to PIERS pursuant to section 103.31(e)(3) which lists 22 data elements that are released to the public." Pl.'s Mem. at 7-8.  Nowhere does the plaintiff contend that the bill of lading screen prints, correspondence, and internal agency memos and forms should be considered "manifest information."  See Pl.'s Mem.; Pl.'s Opp; Pl.'s Reply.

*2. Exemption (b)(2)*

The plaintiff alleges that the defendant improperly applied FOIA exemption (b)(2) as a basis for withholding responsive documents, taking issue specifically with Customs' delineation between "high 2," "low 2," and other exemptions in its <u>Vaughn</u> index.  The plaintiff asserts that it "is not interested in 'low(b)(2)' information" and that "[b]y mixing the high [2] and low [2] [exemptions, Customs makes it] impossible to identify which redactions to dispute."  Pl.'s Mem. at 4.  The plaintiff further asserts that "at other times in the <u>Vaughn</u> index[,] the defendant mixes the (b)(2) with other exemption[s] so that it is impossible to determine which one may or may not be applicable."  <u>Id.</u>[18]  After examining the <u>Vaughn</u> index and the supporting declarations submitted by the defendant, the Court concludes that it is possible to determine the way in which exemption (b)(2) was applied and, further, that the defendant applied exemption (b)(2) correctly.

Under FOIA exemption (b)(2), responsive records that are "related solely to the internal personnel rules and practices of an agency" are not subject to disclosure.  5 U.S.C. § 552(b)(2).  Thus the non-disclosure reach of exemption (b)(2) encompasses  "material 'used for predominantly internal purposes.'"  <u>Schiller v. Nat'l Labor Relations Bd.</u>, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (citation omitted).  Internal material can be withheld either where it "relates to trivial administrative matters of no genuine public interest" ("low 2" information), or where there is some public interest but "disclosure may risk circumvention of agency regulation" ("high 2" information).  <u>Id.</u> (citation

---

[18]   In addition, the plaintiff asserts that "[a]s to the involuntarily submitted documents to Customs, the government has failed to meet its burden by outlining how and why the release of the information would likely result in competitive harm."  Pl.'s Mem. at 5; Pl.'s Opp. at 3 (internal quotation marks and citation omitted).  This argument has no bearing on the Court's assessment of the defendant's application of exemption (b)(2).  The proper inquiry for exemption (b)(2) is first, whether the withheld material is "predominant[ly] internal[]," and second, whether "disclosure may risk circumvention of agency regulation or the material relates to trivial administrative matters of no genuine public interest."  <u>Schiller v. Nat'l Labor Relations Bd.</u>, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (internal quotation marks and citations omitted).  An examination of "how and why the release of the information would likely result in competitive harm" is properly considered in the context of exemption (b)(4).  <u>See</u> discussion <u>infra</u> part III.B.iii.a (discussion of involuntarily submitted information).

omitted); see also Changzhou Laosan Group, 2005 WL 913268, at *3 (stating that "[c]ourts have divided Exemption 2 into two categories: 'low 2' for materials related to trivial administrative matters of no genuine public interest and 'high 2' for substantial internal matters") (citation omitted).  Examples of "low 2" information include "administrative markings" such as file numbers, mail routing stamps, and data processing references, Coleman v. FBI, 13 F. Supp. 2d 75, 78-79 (D.D.C. 1998) (citing Lesar v. Dep't of Justice, 636 F.2d 472 (D.C. Cir. 1980)), as well as other "matters that predominantly relate to internal agency rules and practices," Changzhou Laosan Group, 2005 WL 913268, at *3 (citing Schwaner v. Dep't of the Air Force, 898 F.2d 793, 795 (D.C. Cir. 1990)).  Examples of "high 2" information include internal documents or document identifiers relating to agency investigations and investigatory practices, Schiller, 964 F.2d at 1208, including "investigative team name[s]" and "law enforcement operational handling" procedures, Changzhou Laosan Group, 2005 WL 913268, at *3.  See also Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1071 (D.C. Cir. 1981) (law enforcement training material); Mendoza v. Drug Enforcement Admin., 465 F. Supp. 2d 5, 11 (D.D.C. 2006) (codes and numbers relating to the Drug Enforcement Administration's internal identification system); Romero-Cicle v. Dep't of Justice, Civ. No. 05-2303, 2006 WL 3361747, at *4 (D.D.C. Nov. 20, 2006) (portions of a form that contains information relating to the Bureau of Protection's internal security techniques).

The Court first finds that the Vaughn index, when read in conjunction with the Declaration of FOIA Appeals Officer Shari Suzuki, provides sufficient detail for determining which documents might contain "high 2" information and which contain "low 2" information.  See Suzuki Decl. ¶¶ 34-38.  With respect to documents that were withheld in part under exemption (b)(2),[19] the

---

[19]   Portions of documents 4-7, 29-31, and 55-58 were withheld pursuant to exemption (b)(2).   Def.'s Mem. at 24 (citing Suzuki Decl. ¶ 38 and Ex. A thereto).

defendant's <u>Vaughn</u> index describes these documents as "internal computer screen instructions" or "internal computer system identifiers, function codes and file numbers." Def.'s Mem., Ex. A. The Suzuki Declaration clarifies that the information contained therein is "low 2" information: "The 'low 2' information withheld pursuant to exemption (b)(2) consists of administrative markings (<u>e.g.</u> file or tracking numbers) relating to internal agency file control systems and procedures, the identity of particular types of computer systems and system reports, and to key strokes and function codes of internal agency computerized property management systems." Suzuki Decl. ¶ 35. With respect to documents withheld in full under this exemption,[20] the defendant's <u>Vaughn</u> index states that all of these documents contained "internal agency operational procedures." Def.'s Mem., Ex. A. The Suzuki Declaration explains that this is "high 2" information: "'[H]igh 2' information consists of such things as the administrative procedures in regard to the operational responsibilities discussed and assigned to [Customs] personnel, and how information was handled in a operational context by [Customs] enforcement officers." Suzuki Decl. ¶ 37. From what has been provided by the defendant, the Court cannot agree that it is not possible to identify which redactions relate to "low 2" and "high 2" information. Again, the Court notes that other members of this Court have reached similar conclusions in assessing Customs' application of "low 2" and "high 2" information using <u>Vaughn</u> indexes that presented nearly identical information. <u>See Newry Ltd.</u>, 2005 WL 3273975, at *3; <u>Suzhou Yuanda Enter.</u>, 404 F. Supp. 2d, at 12; <u>Changzhou Laosan Group</u>, 2005 WL 913268, at *3.[21]

---

[20] Documents 36, 39, 40, 52-54, and 64-68 were withheld entirely. Def.'s Mem., Ex. B.

[21] The Court notes that another member of this Court required Customs to distinguish between "high 2" and "low 2" information in its <u>Vaughn</u> index, because it was impossible to distinguish between the two types of information as described in Customs' <u>Vaughn</u> index. <u>See Peter S. Herrick's Customs and Int'l Trade Newsletter v. U.S. Customs and Border Prot. Bureau</u>, Civ. No. 04-00377, 2005 WL 3274073, at *2 (D.D.C.Sept. 22, 2005). Here, in contrast, the level of detail in the <u>Vaughn</u> indexes and supporting documents allow the Court to determine what information is "high 2" and what is "low 2" in the absence of an express determination by Customs.

The defendant has also clearly explained why it applied exemption (b)(2), as opposed to other FOIA exemptions, to portions of documents that were withheld in their entirety.  See Def.'s Mem., Ex. B.  The Vaughn index specifies that the defendant applied exemption (b)(2) to documents that contained information concerning "internal agency examination procedures." Def.'s Mem., Ex. B, at 1, 4-6.  The Vaughn index further delineates between the information withheld pursuant to exemption (b)(2) and information withheld pursuant to other exemptions.  Id. The Court therefore finds that the Vaughn index provides sufficient detail to determine which portions of documents were redacted pursuant to exemption (b)(2), even where the defendant applied other FOIA exemptions.

Having concluded that the defendant identified the documents withheld under exemption (b)(2) with sufficient specificity, the Court finds that Customs properly applied exemption (b)(2). The "low 2" information identified and withheld by Customs is internal and of an administrative nature.[22]  "[C]omputer function codes, internal file numbers, computer system and report identity, internal operation information, and internal agency procedures are clearly documents that are predominantly internal to the agency, or are sufficiently related to a personnel rule or practice, and are therefore [] easily discernable and properly withheld [as 'low 2' information]."  Changzhou Laosan, 2005 WL 913268, at *3.  The "high 2" information identified and withheld by Customs is also internal and relates to an ongoing criminal investigation.  "Because disclosure of the processing, accounting and storage techniques may benefit those attempting to violate the law and avoid detection by Customs, the disclosure could risk circumvention of Customs regulations or

---

[22]  The Court notes that the plaintiff requests only the "high 2" information.  Pl.'s Mem. at 4 (stating that "[the] [p]laintiff is not interest[ed] in 'low (b)(2)' information.").  However, elsewhere the plaintiff objects to withholdings because the information is allegedly in the plaintiff's possession, and because the information in the withholdings will not clearly result in "competitive harm."  Id. (internal quotation marks and citation omitted).  Because it is unclear whether the plaintiff's other objections might apply to "low 2" as well as the requested "high 2" information, the Court has assessed the appropriateness of both types of withholdings.

19

statutes." <u>Suzhou Yuanda Enter.</u>, 404 F. Supp. 2d at 12.  For these reasons, the Court concludes that Customs properly applied exemption (b)(2) to the documents and information it has withheld.

### 3.  Exemption (b)(4)

Exemption (b)(4) states that "trade secrets" and "commercial or financial information obtained from a person [that is] privileged or confidential" are exempt from disclosure under the FOIA.  5 U.S.C. § 552(b)(4).  Here, the plaintiff and the defendant agree that the withheld information is of a "commercial and financial" nature, and neither assert that the information is privileged.  <u>See</u> Pl.'s Mem. at 3; Def.'s Mem. at 21.  The Court therefore focuses its analysis on whether the information meets the requirement of being "confidential."

### a. <u>Involuntarily Submitted Information</u>

The standard for determining whether the information is "confidential" depends on whether the information was submitted involuntarily or voluntarily.  <u>See</u> <u>Judicial Watch, Inc. v. FDA</u>, 449 F.3d 141, 148 (D.C. Cir. 2006).  Involuntarily submitted information is "confidential" if it either "(1) impair[s] the agency's ability to get information in the future; or (2) cause[s] substantial competitive harm to the entity that submitted the information."  <u>Id.</u> (citation omitted).  "[F]or the government to preclude disclosure based on a competitive injury claim, it must prove that the submitters [of the responsive information] (1) actually face competition, and [that] (2) substantial competitive injury would likely result from disclosure."  <u>Niagara Mohawk</u>, 169 F.3d at 18 (internal quotation marks and citation omitted).  Additionally, the agency must submit evidence showing that the submitters of the information themselves object to the disclosure of the information, as "[c]ourts have repeatedly rejected competitive harm claims when they are advanced solely by the defendant agencies."  <u>Newry Ltd.</u>, 2005 WL 3273975, at *4 (citations omitted).

The plaintiff argues that Customs improperly applied exemption (b)(4) because disclosure of the requested information will not result in competitive harm to any third parties.[23]  Pl.'s Mem. at 2; Pl.'s Opp. at 2.  Specifically, the plaintiff argues that all of the documents "pertaining to the entry and transportation of its merchandise" should be released because they relate only to the seizure of its merchandise, and therefore "actual competition and a likelihood of substantial injury to any other person does not exist."[24]  Pl.'s Opp. ¶ 2.  The defendant, for its part, states that some of the information contained in the documents generated for the entry of goods into the United States is "confidential commercial information, submitted to it with an expectation that it will be kept confidential."  Def.'s Mem. at 21.  For the following reasons, the Court finds that the information withheld pursuant to exemption (b)(4) does not need to be released.

Pursuant to exemption (b)(4), Customs withheld involuntarily submitted information from several entry and transportation documents.  See Def.'s Mem., Suzuki Decl. ¶ 43.  These

---

[23]  The plaintiff further asserts that the defendant erred in invoking exemption (b)(4) because "much of the (b)(4) redacted information is already in the plaintiff's possession."  Pl.'s Mem. at 5.  However, the rationale behind the FOIA is that certain documents can and should be released to the general public.  See Nat'l Archives and Records Admin. v. Flavish, 541 U.S. 157, 172 (2004) ("As a general rule, if the information is subject to disclosure, it belongs to all [citizens].").  Therefore, the identity of the requestor is not material to the question of disclosure.  Id. "Simply because [the] plaintiff may already have certain documents in its possession which are considered responsive by the agency processing the FOIA request does not lessen the requirement that an agency follow the guidelines and regulations provided under the FOIA."  Delta Ltd. v. U.S. Customs and Border Prot. Bureau, 384 F. Supp. 2d 138, 148 (D.D.C. 2005), modified by 393 F. Supp. 2d at 19.  In the present case, the fact that the plaintiff may already possess certain documents does not necessarily indicate that release of those documents to the public pursuant to a FOIA request would be proper.  Furthermore, the Court is unable to determine, based on what the plaintiff presented in its papers, what information might be in the plaintiff's possession, and whether the plaintiff possesses that information as a result of public disclosure or because the plaintiff has been involved with the seizure of property by Customs.  The Court therefore will not consider the fact that the plaintiff has possession of these documents in assessing Customs' application of exemption (b)(4).

[24]  The plaintiff also argues that "Company A," a third party that provided documents to Customs, will not suffer competitive harm because it does not compete with the plaintiff.  Pl.'s Reply at 2.  However, the competitive harm at issue must be examined in the context of the relevant market generally, not simply competition between Company A and the plaintiff.  See, e.g. Parker v. Bureau of Land Mgmt., 141 F. Supp. 2d 71, 81 (D.D.C. 2001) (allowing the defendant agency to withhold documents where competition "in the markets at issue" had been established).

documents are forms "CF 7512 Transportation Entry & Manifest of Goods,"[25] Def.'s Mem., Ex. B

at 2-4; Suzuki Decl. ¶50, internal agency form "OFO 'Prospective seizure over $100,000,' internal

agency form[s] on prospective seizures to be transmitted from Port Director and Director of Field

Operations to [] Headquarters,"[26] Def.'s Mem. at 23; Def.'s Mem., Ex. A; Suzuki Decl. ¶¶ 47-48,

and "CBP examination sheet[s]" for the seized containers,[27] Def.'s Mem. at 21; Def.'s Mem., Ex.

B.[28] Customs states that information on these documents is "confidential commercial information,

submitted to it [by shippers] with an expectation that it will be kept confidential." Def.'s Mem. at

21. The Declaration of Cary Silahian, the Vice President and General Counsel of the company that

has now merged with a company denoted as "Company A," identifies Company A as the submitter

of information that would suffer competitive harm from the public disclosure of the information on

these documents. Declaration of Cary Silahian ("Silahian Decl.") ¶¶ 7-8.[29] The Silahian

Declaration specifies that Company A's IRS number was redacted from Customs Forms 7512

because "publishing [the number] will put [the parent company of Company A] at great risk of

again being the victim of fraud, and potentially require the company to expend its limited resources

---

[25] Documents 37, 42-47, and 53. Def.'s Mem., Ex. B.

[26] Documents 1 and 33. Def.'s Mem., Ex. A.

[27] Document 36. Def.'s Mem., Ex. B.

[28] Neither the defendant nor the plaintiff specify which document numbers correspond specifically to "entry and transportation" documents. See Pl.'s Mem.; Def.'s Mem. However, the defendant argues that "involuntarily submitted" information such as the "consignee's name, merchandise value, merchandise descriptions, entry numbers, carrier names, broker names, [and] port locations" should be withheld under exemption (b)(4). See Def.'s Mem. at 22. According to the defendant's Vaughn index, documents 1, 36-37, 42-47, and 53 (corresponding to "OFO prospective seizure forms," Customs Form 7512, and CBP examination sheets) are the only documents from which this type of information was withheld pursuant to exemption (b)(4). See Def.'s Mem., Exs. A & B. The Court therefore concludes that these are the "entry and transportation" documents that the defendant is referring to. Because the plaintiff does not contest or discuss the defendant's characterization of certain documents as "entry and transportation" documents, see Pl.'s Mem., the Court has focused its exemption (b)(4) analyses on these documents only.

[29] In particular, Company A represents that it would suffer competitive harm from the disclosure of its IRS number, which was already used fraudulently without its permission. Silahian Decl. ¶¶ 7-8.

to protect is reputation and to cooperate in any civil or criminal action based on the fraud," Silahian Decl. ¶ 7, and furthermore was placed on these forms without Company A's consent, id. Based on the record before it, the Court agrees that Customs properly redacted Company A's IRS number from Customs Forms 7512, noting that Customs may withhold entry information pursuant to exemption (b)(4) where the submitter of information identifies itself and  "demonstrate[s] [] that releasing the withheld information would cause [it] substantial competitive harm . . . because it is not the type of information a commercial entity would give to a competitor." Suzhou Yuanda Enter., 404 F. Supp. 2d at 12 (citation and internal quotation marks omitted); cf. Changzhou Laosan Group, 2005 WL 913268, at *6 (finding no competitive harm to a third party, only to the plaintiff); Newry Ltd., 2005 WL 3273975, at *4 (rejecting competitive injury claim advanced solely by Customs).

        However, the Silahian Declaration references neither the "prospective seizure forms" nor the "[Customs] examination sheet."  See Silahian Decl.  As noted by another member of this Court with respect to a case that involved Customs and Border Patrol, "[c]onclusory statements [by Customs] that [release of] information would result in substantial [competitive] harm are insufficient to meet the [agency's] burden."  Delta Ltd v. U.S. Customs and Border Prot. Bureau, 393 F. Supp. 2d 15, 19 (D.D.C. 2005).  With respect to the "prospective seizure forms," the Court finds that the name of Company A was nevertheless properly withheld pursuant to exemption (b)(7)(C), to which the plaintiff does not object.  See Pl.'s Mem.; Def.'s Mem., Ex. A.  Had Customs invoked only exemption (b)(4) to the information redacted from these documents, the Court would require specific information about the possible harm that Company A would suffer from the disclosure of its name.  See Suzuki Decl. ¶¶ 47-48 (clarifying that Company A's name was withheld on both of these documents); Silahian Decl. ¶ 2 (stating only that he "refer[s] to the

23

subject company as 'Company A' to protect its identity in accordance with the redactions made by

[Customs]."). Customs has similarly failed to explain why release of the "commercial information

such as merchandise descriptions, entry number, [and container] value" contained on the

"[Customs] examination sheet" would result in harm to the competitive position of Company A or

its parent company. See Delta Ltd., 393 F. Supp. 2d at 19 ("information such as value of the

merchandise, entry numbers, consignees, and carrier names . . . may be the type of information that

a business entity would not otherwise release, [but] the government [must] show how and why this

particular information would damage the competitive position of [the company in question]");

Def.'s Mem., Ex. B; Silahian Decl. ¶ 6 (stating only that release of the "commercial contacts and

supply chain information" voluntarily submitted by Company A would result in competitive harm).

Nevertheless, the Court finds that this document was properly withheld in full because the

information it contains is covered by exemptions (b)(7)(A), (b)(7)(A), (b)(2), and (b)(6). See Def.'s

Mem., Ex. B. Thus, although Customs' application of exemption (b)(4) requires additional

justification in some instances, the Court declines to order the release of the referenced information

because it was properly withheld pursuant to other FOIA exemptions.

b. Voluntarily Submitted Information

Although the plaintiff does not specify whether it objects to Customs' withholding of

voluntarily or involuntarily submitted information, its arguments focus only on the standard that

applies to information submitted involuntarily. See Pl.'s Mem. at 3 (citing lack of "actual

competition and a likelihood of substantial injury to any other person" as its objection to Customs'

application of exemption (b)(4)); Pl.'s Reply at 3 (arguing that Customs' application of exemption

(b)(4) was incorrect because it "has not demonstrated competitive harm"). However, because it is

clear that the plaintiff objects generally to the use of exemption (b)(4), see Pl.'s Mem. at 5; Pl.'s

Opp. at 4; Pl.'s Reply at 2, the Court will consider whether both types of information were correctly withheld.  See Friends of Blackwater, 391 F. Supp. 2d at 119 (in granting summary judgment to the government, courts must construe "the underlying facts and the inferences to be drawn from them . . . in the light most favorable to the FOIA requester") (internal quotation marks and citation omitted).  For the reasons set forth below, the Court determines that Customs properly applied exemption (b)(4) even under the standard for voluntarily submitted information.

Voluntarily submitted information is considered "confidential" if it is of a kind "that would customarily not be released to the public by the person from whom it was obtained."  McDonnell Douglas Corp. v. Nat'l Aeronautics and Space Admin., 180 F.3d 303, 304 (D.C. Cir. 1999) (internal quotation marks and citation omitted); see also Judicial Watch v. Dep't of Army, 466 F. Supp. 2d 112, 125 (D.D.C. Dec. 12, 2006) (citation omitted).  Here, Customs withheld purportedly fraudulent powers of attorney for Company A and letters, emails, and faxes between Company A and Customs.[30]  Def.'s Mem., Exs. A & B.  Customs states that these documents contain "confidential commercial information voluntarily submitted by Company A in response to requests for information from [Customs]," specifically  "Company A's IRS and bond number, business associations between Company A and other commercial entities, [] information relating to shipments between various locations," and names of third parties.  Suzuki Decl. ¶¶ 41-42; Silahian Decl. ¶ 6; Def.'s Mem., Ex. A, at 1-3.  The Silahian Declaration states that Company A would not normally provide this information "to the public-at-large in the normal course of business" because it would provide competitors with information about Company A's commercial practices, including its competitors, and might subject Company A to fraudulent use of Company A's IRS and bond number.  Silahian Decl. ¶ 6. Because the information on these documents is of a type "customarily

---

[30]  Documents 10-11 , 13-15, 18-19, 21-25, 41, and 48-50.  See Def.'s Mem, Exs. A & B.

not . . . released to the public," <u>Critical Mass Energy Project v. NRC</u>, 975 F.2d 871, 879 (D.C. Cir.

1992), it is "confidential" pursuant to exemption (b)(4) and was correctly withheld by Customs.

4.  <em>Exemption (b)(5)</em>

The plaintiff does not dispute that the internal, legal portions of an agency memorandum

were properly withheld pursuant to exemption (b)(5).[31]  Pl.'s Mem. at 9.  Rather, it argues that this

information could have been segregated from other, non-legal portions of the memorandum and

that it is entitled to "the facts contained in [this] withheld document[] that they relied upon for the

seizure and denial of relief."[32]  <u>Id.</u> (citing <u>EPA v. Mink</u>, 410 U.S. 73, 91 (1973)) (allowing

disclosure of "purely factual material appearing in [] documents in a form that is severable without

compromising the private remainder of the documents").  The defendant asserts that the two-page

Customs internal memorandum was properly withheld in full "because it contains the agency's

internal deliberative thought process and theory of the case concerning details of the investigation

and processing of the underlying seizure case."  Def.'s Mot. at 26 (citing Suzuki Decl. ¶ 56).  For

the following reasons, the Court concludes that Customs correctly withheld the memorandum under

exemption (b)(5).

FOIA exemption (b)(5) allows an agency to withhold "inter-agency or intra-agency

memorand[a] or letters which would not be available by law to a party other than an agency in

---

[31]  Document number 39-40.  Def.'s Mem., Ex. B.

[32]  The plaintiff does not identify any uses of exemption (b)(5), other than the single internal agency memorandum regarding investigation of the seizure, that it objects to.  <u>See</u> Pl.'s Mem at 8-9.  Yet, Customs also applied exemption (b)(5) to an email and internal "memos" regarding the plaintiff's petition for relief from forfeiture, Def.'s Mem., Ex. B at 4-5.  The Court notes however that, in a single instance, the plaintiff refers to the objectionable (b)(5) withholdings in the plural.  Pl.'s Mem. at 9 (referring to "<u>these</u> withheld documents") (emphasis added).  The Court concludes that this reference was a typographical error because the plaintiff specifies that the documents at issue were "relied upon for seizure and denial of relief" and because the sentence that immediately follows again refers only to "<u>the</u> internal memorandum" that allegedly should be released.  Pl.'s Mem. at 9 (emphasis added).  Therefore, the Court will only consider the plaintiff's objections to Customs' use of exemption (b)(5) as applied to document numbers 39-40.

26

litigation with the agency." 5 U.S.C. § 552(b)(5).  A document must satisfy two conditions to

qualify for withholding under exemption (b)(5): first, it must originate with a government agency;

and second, "it must fall within the ambit of a privilege against discovery under judicial standards

that would govern litigation against the agency that holds it."  Dep't of Interior v. Klamath Water

Users Protective Ass'n, 532 U.S. 1, 8 (2001).   In this case, the plaintiff and defendant agree that

the memorandum in question is an intra-agency document.  Pl.'s Mem. at 7, Def.'s Mem. at 26.  It

is therefore only the second requirement that the defendant invokes in support of its application of

the deliberative process privilege, Def.'s Mot. at 24, which exempts from disclosure "documents

reflecting advisory opinions, recommendations and deliberations comprising part of a process by

which governmental decisions and policies are formulated." Klamath Water Users Protective

Ass'n, 532 U.S. at 8 (citation and internal quotation marks omitted).[33]  Such documents are

protected by the deliberative process privilege when they are (1) "predecisional," requiring

"generat[ion] before the adoption of the agency policy," and (2) "deliberative," requiring

"reflect[ion] [of] the give-and-take of the consultative process."  Judicial Watch, Inc., 449 F.3d at

151 (internal citation omitted).

    As a threshold matter, the Court agrees with the defendant that the "memorandum regarding

investigation" into Customs' possible seizure is "pre-decisional" and "deliberative."[34]  See Judicial

Watch, Inc, 449 F.3d at 152 (finding that providing a document label such as "draft" could indicate

the document's "predecisional and deliberative elements").  The document is therefore of a type

that is covered by exemption (b)(5).  See Baker & Hostetler, 473 F.3d at 321.  The Court also finds,

in light of the Suzuki Declaration, Suzuki Decl. ¶ 55,  that "it seems evident that the [factual and

---

[33]  Other examples of privileges that are incorporated into exemption (b)(5) include the government attorney-client
privilege, the government attorney work product protection, the presidential communications privilege, and the state
secrets privilege.  Baker & Hostetler, 473 F.3d at 321.

[34]  The plaintiff does not dispute this conclusion.  See generally Pl.'s Mem.

27

deliberative] information in [the] document[] is not severable." Delta Ltd. v. U.S. Customs and

Border Prot. Bureau, 384 F. Supp. 2d 138, 152 (D.D.C. 2005), modified by 393 F. Supp. 2d at 19.

Customs properly withheld this information in its entirety because "[w]hile purely factual material

is not exempt from disclosure, those facts that are inextricably intertwined with the opinions and

legal conclusions included in the document are exempt." Suzhou Yuanda Enter., 404 F. Supp. 2d at

13 (citations omitted); see also Delta Ltd., 384 F. Supp. 2d at 152; Changzhou Laosan Group, 2005

WL 913268, at *7.  Furthermore, as the defendant correctly notes, Def.'s Opp. at 16, its Vaughn

index indicates that the allegedly disclosable facts in the memorandum were also properly withheld

pursuant to exemptions (b)(2) (internal agency operating procedures), (b)(6) and (b)(7)(C) (names

of Customs personnel and names of third parties), (b)(7)(E) (discussion of investigatory methods),

and (b)(7)(A) (companies and third parties providing information to Customs in its enforcement

and investigative efforts).  Def.'s Mem., Ex. B.  The Court therefore agrees with Customs that the

internal memorandum was properly withheld in full because the factual components of the

document cannot be severed.

### C. Segregability

The plaintiff also argues that Customs has failed to disclose all of the reasonably segregable

information in its files.  Pl.'s Mem. at 11 ("The defendant's declaration[s] and Vaughn index suffer

from . . . vagueness and lack of specificity."); Pl.'s Opp. at 6.  The Court disagrees, and finds that

the defendant has satisfied the FOIA's segregability requirement.

An agency "shall" disclose "[a]ny reasonably segregable portion of a record . . . after

deletion of the portions which are exempt."  5 U.S.C. § 552(b).  Where information is not disclosed,

"[t]he burden is on the agency to sustain its action."  5 U.S.C. § 552(a)(4)(B).  "[T]he withholding

agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" Schiller, 964 F.2d at 1210 (quoting King, 830 F.2d at 224 (emphasis omitted)); see also Vaughn, 484 F.2d at 827 (an agency must "specify in detail which portions of the document are disclosable and which are allegedly exempt"). The agency's justifications must focus on the withheld information, and thus "an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." Schiller, 964 F.2d at 1209 (citation omitted). Finally, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." Mead Data Central, Inc. v. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).

Where documents were released in part, the defendant's Vaughn indexes clearly specify the type of information that has been redacted and correlates that information to a specific FOIA exemption. See generally Def.'s Mem., Ex. A. This level of detail is sufficient to meet the FOIA's segregability requirement. See, e.g. Newry Ltd., 2005 WL 3273975, at *6 (finding that the segregability requirement was fulfilled where Customs' Vaughn index "identifie[d] what type of information [had] been redacted in each document and under what exemption); Changzhou Laosan Group, 2005 WL 913268, at *9 (sanctioning Customs' redactions where "[t]he Vaughn index details the type of information redacted, and since many of the documents are forms or templates, it is also clear from the face of the document why certain information is redacted"); cf. Peter S. Herrick's Customs and Int'l Trade Newsletter v. U.S. Customs and Border Prot. Bureau, Civ. No. 04-377, 2005 WL 3274073, at *3 (D.D.C. Sept. 22, 2005) (finding that Customs did not meet the segregability requirement where its Vaughn index failed to identify each exemption with related material, explain why certain pages were withheld in full and others in part, or describe redacted

29

information with useful detail).  Where Customs has withheld documents in full, its <u>Vaughn</u> indexes

clearly indicate the type of information withheld under each exemption and states that multiple

exemptions were applied to the same document.  <u>See generally</u> Def.'s Mem., Ex. B.  Thus, the

<u>Vaughn</u> indexes show that entire documents were properly withheld because the nonexempt portions

were "inextricably intertwined" with the exempt portions.  <u>See, e.g.</u> <u>Newry Ltd.</u>, 2005 WL 3273975,

at *6; <u>Changzhou Laosan Group</u>, 2005 WL 913268, at *9.  The Court therefore concludes that the

defendant disclosed all reasonably segregable information.

## IV. Conclusion

For the foregoing reasons, this Court concludes that the defendant is entitled to judgment as a

matter of law at this time.  Accordingly, the Court grants the defendant's motion for summary

judgment and denies the plaintiff's cross-motion.

**SO ORDERED** this 11th day of April 2007.[35]


REGGIE B. WALTON
United States District Judge

---

[35] An Order consistent with the Court's ruling was issued on March 29, 2007.