UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| N.Y.C. APPAREL F.Z.E., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 04-2105 (RBW) |
| UNITED STATES CUSTOMS AND BORDER PROTECTION BUREAU, | ) ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

N.Y.C. Apparel F.Z.E. initiated this civil lawsuit on December 3, 2004, seeking to compel the disclosure of certain records requested from the United States Customs and Border Protection Bureau pursuant to the Freedom of Information Act, 5 U.S.C. §§ 552-552b (2000) (the "FOIA"). Currently before the Court is the Plaintiff's Motion for an Award of Attorney Fees (the "Pl.'s Mot."), in which the plaintiff requests attorney's fees in the amount of $21,722.50. After carefully considering the plaintiff's motion, the defendant's opposition (the "Def.'s Opp'n"), and the plaintiff's reply memorandum in support of its motion (the "Pl.'s Reply"), the Court concludes that the motion must be denied for the reasons that follow.

**I. Background**

The Court has previously described the facts underlying this case in some detail in separate memorandum opinions, see generally NYC Apparel FZE v. U.S. Customs and Border Prot., No. Civ. A. 04-2105 (RBW), 2006 WL 167833 (D.D.C. Jan. 23, 2006) ("NYC Apparel I") (resolving cross-motions for summary judgment filed by the parties); NYC Apparel FZE v. U.S.

Customs and Border Prot. Bureau, 484 F. Supp. 2d 77 (D.D.C. 2007) ("NYC Apparel II") (resolving renewed cross-motions filed by the parties), and therefore need only briefly describe them here. In summary, the plaintiff, an exporter of merchandise from the United Arab Emirates, claims that the defendant seized two of its containers at the Los Angeles-Long Beach Seaport on July 9, 2003, and July 12, 2003, which led the plaintiff to submit a FOIA request on September 3, 2003, for all information relating to those searches. NYC Apparel II, 484 F. Supp. 2d at 82. When the defendant refused to disclose eighty-four pages of documents that were responsive to the plaintiff's request on the ground that the documents were exempt from disclosure under the FOIA, the plaintiff first appealed that determination to the defendant's FOIA Appeals Officer and, after receiving no determination from the FOIA Appeals Officer, filed its complaint in this Court on December 3, 2004. Id. at 82-83.

After this action was initiated, the FOIA Appeals Officer (the "Appeals Officer") issued her decision in a letter dated February 23, 2005. Id. at 83. In that letter, the Appeals Officer determined that thirty-five of the eighty-four pages discovered by the defendant should be released to the plaintiff, that nineteen pages were properly withheld by the defendant, and that the remaining thirty pages were duplicates of the pages subject to disclosure or properly withheld. Id. In response to the Appeals Officer's decision, the parties filed cross-motions for summary judgment with respect to the adequacy of the defendant's search for responsive documents and with respect to whether the documents withheld by the defendant were exempt from disclosure under the FOIA. Id. at 83-84. In an unpublished memorandum opinion issued on January 23, 2006, this Court concluded that neither party was entitled to summary judgment based on the record before it, but that the defendant could remedy its evidentiary deficiencies within thirty

days of the order executing the Court's memorandum opinion. NYC Apparel I, 2006 WL 167833, at *8. The Court further provided that if the defendant thought it "necessary to undertake an additional search for documents pursuant to the plaintiff's FOIA request," it needed to do so no later than sixty days from the date of the accompanying order. Id.

As permitted by the Court's memorandum opinion and order, the defendant renewed its search for documents responsive to the plaintiff's FOIA request. NYC Apparel II, 484 F. Supp. 2d at 84. The defendant discovered ten additional documents, five of which it released to the plaintiff. Id. Thereafter, the parties renewed their motions for summary judgment. Id. On April 11, 2007, the Court issued a memorandum opinion in which it "held that the defendant is entitled to judgment as a matter of law." Id. at 99. The very next day, the plaintiff filed a motion to alter or amend the Court's order, which the Court denied in an order (the "Reconsideration Order") entered on January 15, 2008. Reconsideration Order at 3.

The plaintiff filed its motion for attorney's fees and costs on January 31, 2008. In support of its motion, the plaintiff argues that (1) it is entitled to attorney's fees and costs because the Court's NYC Apparel I decision and accompanying order led to the production of five pages of documents by the defendant, and because the relevant factors used to determine whether a prevailing party is entitled to an award favor the plaintiff, Pl.'s Mot. at 3-8, and that (2) the fees requested by the plaintiff are reasonable, id. at 8. The defendant contests both of these assertions in its opposition, Def.'s Opp'n at 7-19, and further argues that the comparatively more lenient standard for a plaintiff to succeed on its request for attorney's fees under the attorney fee provision in the FOIA as amended on December 31, 2007, 5 U.S.C. § 552(a)(4)(E)(i) (2000), should not apply to the plaintiff's request in this case because the Court granted the defendant's

3

motion for summary judgment prior to that time, Def.'s Opp'n at 3-6.  The plaintiff counters that the amendment made to the fee-shifting provision of the FOIA only codified pre-existing law, Pl.'s Reply at 2-6, and notes that the Court did not resolve its motion for reconsideration until after the amendment to the provision went into effect, id. at 3.

## II. Standard of Review

Under the FOIA, a court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i).  To recover such fees, a party must demonstrate that (1) it has substantially prevailed in the litigation and is therefore "eligible" for the award, and (2) it is "entitled" to fees based on the trial court's assessment of four criteria: (1) the public benefit derived from the case, (2) the commercial benefit to the plaintiff, (3) the nature of the plaintiff's interest in the records, and (4) the reasonableness of the agency's withholding.  Tax Analysts v. U.S. Dep't of Justice, 965 F.2d 1092, 1093 (D.C. Cir. 1992).  "The sifting of [these] criteria over the facts of a case is a matter of district court discretion." Id. at 1094.  If a district court decides that the plaintiff has substantially prevailed and has satisfied the four criteria, the court must then make a determination as to whether the amount of attorneys' fees requested is reasonable.  Summers v. U.S. Dep't of Justice, 477 F. Supp. 2d 56, 63-64 (D.D.C. 2007).

## III. Legal Analysis

Based upon the positions framed by the parties in their memoranda of law, the issues before the Court are (1) whether § 4 of the OPEN Government Act of 2007, Pub. L. 110-175, 121 Stat. 2524 (2007) (the "OGA"), which expanded the conditions under which a plaintiff could

recover attorney's fees under § 552(a)(4)(E), applies retroactively to the plaintiff's fee-shifting request, (2) whether the plaintiff has "substantially prevailed" in its lawsuit, and therefore is eligible for a fee award under the amended statute, and (3) whether the plaintiff is "entitled" to attorney's fees and costs under the four criteria set forth by the District of Columbia Circuit in Tax Analysts.  Because the Court concludes that § 4 of the OGA cannot be applied retroactively to the circumstances of this case, it need not address the latter two issues in dispute.  It will therefore confine its analysis to the issue of retroactivity.

The plaintiff's entire motion takes as its premise the applicability of § 552(a)(4)(E) as amended by the OGA.  The OGA provides in pertinent part that:

> (a) IN GENERAL.--Section 552(a)(4)(E) of title 5, United States Code, is amended--
>
> (1) by inserting "(i)" after "(E)"; and
>
> (2) by adding at the end of the following:
>
> > (ii) For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either–
> >
> > (I) a judicial order, or an enforceable written agreement or consent decree; <u>or</u>
> >
> > (II) <u>a voluntary or unilateral change in position by the agency, if the complainant's claims is not insubstantial</u>.

OGA § 4(a), 121 Stat. at 2525 (emphasis added).

The language added by the OGA, particularly the language found in sub-part (ii)(II) of the amended provision, essentially codifies the so-called "catalyst theory" for determining a fee request against the United States, under which a plaintiff is deemed to have "substantially

prevailed" for purposes of § 552(a)(4)(E) if the "litigation substantially caused the requested records to be released." Chesapeake Bay Found. v. Dep't of Agric., 11 F.3d 211, 216 (D.C. Cir. 1993). The catalyst theory was explicitly rejected by the Supreme Court in Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources, 532 U.S. 598 (2001), in the context of a request for attorney's fees against the United States under analogous fee-shifting provisions in the Fair Housing Amendments Act of 1998, 42 U.S.C. §§ 3610-3614a (2000) (the "FHAA"), and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-02, 12111-17, 12131-34, 12141-50, 12161-65, 12181-89, 47 U.S.C. §§ 225, 12201-13 (2000) (the "ADA"), see also Buckhannon, 532 U.S. at 610 ("[W]e hold that the 'catalyst theory' is not a permissible basis for the award of attorney's fees under the FHAA . . . and [the] ADA . . . ."). The Court reasoned that the plaintiff must have secured either a judgment on the merits of its claim or a court-ordered consent decree to qualify as a "prevailing party" based on the Court's traditional interpretation and the plain meaning of that term. Id. at 603-04. In Oil, Chemical & Atomic Workers International Union v. Department of Energy, 288 F.3d 452, 454 (D.C. Cir. 2002) ("OCAW"), the District of Columbia Circuit applied the Buckhannon standard to fee-shifting requests under the FOIA. See id. at 454-57 (reasoning that "eligibility for an award of attorney's fees in a FOIA case should be treated the same as eligibility determinations made under other fee-shifting statutes unless there is some good reason for doing otherwise," and finding no good reason to withhold application of the Buckhannon standard to fee-shifting requests under the FOIA); see also Piper v. U.S. Dep't of Justice, 339 F. Supp. 2d 13, 17 (D.D.C. 2004) (recognizing that the Supreme Court's decision in Buckhannon "dramatically changed" the interpretation of the phrase "substantially prevailed" in § 552(a)(4)(E)).

6

The sustainability of the plaintiff's fee-shifting request therefore turns in the first instance on the applicability of § 4 of the OGA to this case. If the newly-added statutory provision applies, then the plaintiff could conceivably prevail on its request based on the defendant's decision to renew its search for responsive documents in the wake of the Court's decision in NYC Apparel I. If the provision does not apply, then the plaintiff's motion must fail because there was no judgment or consent decree compelling the defendant to undertake its second search. See OCAW, 288 F.3d at 456-57 ("for plaintiffs in FOIA actions to become eligible for an award of attorney's fees, they must have 'been awarded some relief by [a] court,' either in a judgment on the merits or in a court-ordered consent decree" (quoting Buckhannon, 532 U.S. at 603 (alteration made by the court in OCAW))).

"[T]he presumption against retroactive legislation is deeply rooted in [this country's] jurisprudence, and embodies a legal doctrine centuries older than [the] Republic." Landgraf v. USI Film Prods., 511 U.S. 244, 265 (1994). Consequently "[a] statute may not be applied retroactively . . . absent a clear indication from Congress that it intended such a result," INS v. St. Cyr, 533 U.S. 289, 316 (2001). In Landgraf, the Supreme Court explained the appropriate method for determining the applicability of "a federal statute enacted after the events in suit" as follows:

> [T]he court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect[;] i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would

>operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

Landgraf, 511 U.S. at 280.  Additionally, "other construction rules may apply to remove even the possibility of retroactivity," Lindh v. Murphy, 521 U.S. 320, 326 (1997), such that the Court must ascertain whether "the normal rules of statutory construction apply in such a way as to remove the possibility of retroactivity" before determining whether the statute has a retroactive effect, Mathews v. Kidder, Peabody & Co., 161 F.3d 156, 160 (3d Cir. 1998).

"Accordingly, the first step in determining whether a statute has an impermissible retroactive effect is to ascertain whether Congress has directed with the requisite clarity that the law be applied retrospectively." St. Cyr, 533 U.S. at 316. "The standard for finding such unambiguous direction is a demanding one," id., for the language in the statute at issue must be "so clear that it could sustain only one interpretation" to qualify, Lindh, 521 U.S. at 328 n.4. Here, the statutory provision in question is silent with respect to the issue of retroactivity. Because the provision is bereft of any "language making explicit reference to the statute's temporal reach," Martin v. Hadix, 527 U.S. 343, 355 (1999), the Court must "proceed to the second step of Landgraf[']s] retroactivity analysis in order to determine" whether § 4 of the OGA has a retroactive effect on the rights of the defendant in this case, St. Cyr, 533 U.S. at 320.

"[D]eciding when a statute operates 'retroactively' is not always a simple or mechanical task." Landgraf, 511 U.S. at 268.  As the Supreme Court explained in Landgraf:

>A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment . . . . Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment.  The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning

>the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event.

Id. at 269-70.

The plaintiff argues that § 4 of the OGA does not have any retroactive effect on the substantive rights of the defendant because the statute "affects only attorney's fee awards[,] which are collateral to the main cause of action." Pl.'s Reply at 5. Citing Bradley v. School Board of City of Richmond, 416 U.S. 696 (1974), where the Supreme Court upheld the retroactive application of a statutory provision authorizing the award of attorney's fees, id. at 721, the plaintiff asserts that "[t]here is no manifest injustice in applying" a statute awarding attorney's fees in a retroactive fashion, Pl.'s Reply at 5-6. Thus, according to the plaintiff, "[r]etroactivity is not an issue with this motion." Pl.'s Reply at 2.

The Court finds this argument unpersuasive. In Bradley, the plaintiffs in a school desegregation case included a request for "a significant award of attorneys' fees" in a motion seeking injunctive relief in light of contemporary Supreme Court precedent concerning school desegregation. Bradley, 416 U.S. at 701-705. The district court granted this request "based . . . on two alternative grounds rooted in its general equity power." Id. at 706. After the case was appealed to the Fourth Circuit, but before the Circuit Court could render a decision, Congress passed the Education Amendments of 1972, Pub. L. 92-318, 86 Stat. 235 (1972) (the "Education Amendments"), which, inter alia, amended 20 U.S.C. § 1617 to permit "a federal court to award a reasonable attorney's fee when appropriate in a school desegregation case." Bradley, 416 U.S. at 709. Notwithstanding this development, the Fourth Circuit reversed the district court's fee award, reasoning that the lack of explicit statutory authority supporting

9

attorney fee awards indicated Congress's intent not to permit such awards under the statutory scheme in existence at that time, id. at 708-09, and that the Education Amendments did not separately empower the district court to award attorney's fees because "only legal services rendered after . . . the effective date" of the amendment "were compensable under [the amended] statute" and "there were no orders pending or appealable" in the case at the time of the statutory amendment, id. at 709.

      The Supreme Court reversed the Fourth Circuit's decision. Id. at 724. The Court "anchor[ed] [its] holding . . . on the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Id. at 711. Applying a three-part test that "center[ed] upon (a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights," id. at 717, the Supreme Court concluded that retroactive application of the Education Amendments to permit attorney fee awards would not result in a "'manifest injustice,'" id. at 721. The Court reached this conclusion because of "the disparity in the respective abilities of the parties adequately to present and protect their interests," which favored the plaintiffs, id. at 718, the lack of any "matured or unconditional right" held by the defendant that was "affected by" the retroactive application of the amended statute, id. at 720, and the fact that "[f]rom the outset" of the case, the defendant "engaged in a conscious course of conduct with the knowledge that, under different theories, . . . the [defendant] could have been required to pay attorneys' fees," id. at 721. The Supreme Court also rejected the Fourth Circuit's holding that the language of the amended statute required a final order to be pending or on appeal to fall within the scope of the statute. Id. at 721-24.

Contrary to the plaintiff's contentions, the key determinant for the Supreme Court in Bradley was not the "collateral" nature of attorney fee awards. Rather, the decision turned in large part on the lack of any prejudice to the substantive rights of the defendant, coupled with the fact that the defendant was already on notice that it might have to pay attorneys' fees before Congress passed the Education Amendments. As the Supreme Court observed in Landgraf, "[i]n light of the prior availability of a fee award[] and the likelihood that fees would be assessed under pre-existing theories, [the Bradley Court] concluded that the new fee statute simply did not impose an additional or unforeseeable obligation upon the school board." Landgraf, 511 U.S. at 278 (internal quotation and citation omitted).

The basis for the plaintiff's argument is therefore not to be found in Bradley at all, but rather appears to arise from a passage in Landgraf where the Supreme Court noted that the attorney fee provision in Bradley "did not resemble the cases in which [the Court] ha[d] invoked the presumption against statutory retroactivity," in part because "[a]ttorney's fee determinations . . . are collateral to the main cause of action and uniquely separable from the cause of action to be proved at trial." Landgraf, 511 U.S. at 277 (internal quotation and citation omitted). But nothing in Landgraf suggests that all statutory provisions regarding attorney fee awards (as opposed to the specific provision at issue in Bradley) should be deemed not to have any substantively retrospective effect and therefore should be applied retroactively. Such a conclusion is unwarranted, much as the Supreme Court's observation in Landgraf that it has "regularly applied intervening statutes conferring or ousting jurisdiction" retroactively, Landgraf, 511 U.S. at 274, is not construed as a categorical ruling that all statutes of that nature should apply in a similar fashion, see Hughes Aircraft Co. v. United States, 520 U.S. 939, 951-52 (1997)

(holding that amendment to jurisdictional provision of the False Claims Act, 31 U.S.C. §§ 3729-31 (2000), permitting qui tam suits based on information in government's possession under certain circumstances did not apply retroactively to conduct occurring before its effective date). In both situations, "[t]he fact that courts often apply newly enacted . . . statutes [addressing these issues] to pending cases merely evidences certain limited circumstances failing to meet the conditions for [the Supreme Court's] generally applicable presumption against retroactivity, not an exception to the rule itself." Hughes, 520 U.S. at 951.

Martin exemplifies this point. That case involved a dispute over the temporal scope of an attorney fee provision enacted after the merits of the litigation generating the fee dispute had concluded. Congress had passed legislation–specifically, § 803(d)(3) of the Prison Litigation Reform Act of 1995, Pub. L. 104-134, 110 Stat. 1321 (1996) (the "PLRA")–that limited the amount of fees that could be collected by "attorneys who litigate[d] prisoner lawsuits," Martin, 527 U.S. at 347. When the attorneys for the successful plaintiffs in two class-action lawsuits arising out of the conditions of the plaintiffs' confinement in the Michigan prison system submitted their fee requests for compliance monitoring performed "between January 1, 1996, and June 30, 1996, a time period encompassing work performed both before and after the effective date of the PLRA," the district court granted the fee request in full for work performed prior to the PLRA's enactment but imposed the fee limits set forth in the PLRA for work performed after the statute went into effect. Id. at 351. The Sixth Circuit affirmed the district court's determination that the PLRA did not retroactively limit the amount of fees that could be collected by the attorneys, and further concluded that "the PLRA's fee limitation [did] not apply to fee requests . . . that relate[d] to cases that were pending on the date of the enactment." Id.

Although it reversed the Sixth Circuit's ruling with respect to the latter conclusion, id. at 360, the Supreme Court affirmed the district court's and the Sixth Circuit's conclusion that § 803(d)(3) of the PLRA could not be applied retroactively to limit attorney fee recoveries for work performed prior to the enactment of the statute, id. at 352-360.  Noting that "Congress ha[d] not expressly mandated the temporal reach of § 803(d)(3)," id. at 353, the Court proceeded to "determine whether application of [§ 803(d)(3)] would have retroactive effects inconsistent with the usual rule that legislation is deemed to be prospective," id. at 357.  It concluded that "the PLRA's attorney's fees provisions . . . would have a retroactive effect" because they "would alter the fee arrangement post hoc by reducing the rate of compensation" for the attorneys requesting fees, thereby "attach[ing] new legal consequences to completed conduct."  Id. at 358 (internal quotation and citation omitted).  In contrast, the Supreme Court concluded that "there [was] no retroactivity problem" with respect to the application of the PLRA to work performed after the statute's enactment because the statute put the plaintiffs' attorneys "on notice that their hourly rate had been adjusted" and "[t]here [was] no manifest injustice in telling an attorney performing post-judgment monitoring services that, going forward, she [would] earn a lower hourly rate than she had earned in the past."  Id. at 360.

The Supreme Court also explicitly rejected the same argument advanced by the plaintiff in this case, i.e., that statutory provisions involving attorney fee awards are "collateral" to the main litigation and therefore do not have retroactive effect.  The Court's disposition of the argument warrants quotation in full:

> Petitioners . . . contend that the application of a new attorney's fee provision is "'unquestionably proper,'" Brief for Petitioners 24 (quoting Landgraf, [511 U.S.] at 273, 114 S. Ct. [at] 1483), because

13

> fees questions "are incidental to, and independent from, the underlying substantive cause of action." They do not, in other words, change the substantive obligations of the parties because they are "collateral to the main cause of action." Brief for Petitioners 24-25 (quoting Landgraf, 511 U.S.[] at 277, 114 S. Ct. [at] 1483) (internal quotation marks omitted). Attaching the label "collateral" to attorney's fees questions does not advance the retroactivity inquiry, however. While it may be possible to generalize about types of rules that ordinarily will not raise retroactivity concerns, . . . these generalizations do not end the inquiry. . . . When determining whether a new statute operates retroactively, it is not enough to attach a label (e.g., "procedural," "collateral") to the statute; we must ask whether the statute operates retroactively.

Martin, 527 U.S. at 358-59.

The Supreme Court went on to distinguish the case before it from the situation in Bradley:

> In Bradley, the [d]istrict [c]ourt had awarded attorney's fees, based on general equitable principles, to a group of parents who had prevailed in their suit seeking the desegregation of the Richmond schools. While the case was pending on appeal, Congress passed a statute specifically authorizing the award of attorney's fees for prevailing parties in school desegregation cases. The Court of Appeals held that the new statute could not authorize fee awards for work performed before the effective date of the new law, but we reversed, holding that the fee award in that case was proper. Because attorney's fees were available, albeit under different principles, before passage of the statute, and because the District Court had in fact already awarded fees invoking these different principles, there was no manifest injustice in allowing the fee statute to apply in that case. . . . In this case, by contrast, from the beginning of these suits, the parties have proceeded on the assumption that 42 U.S.C. § 1988 would govern. The PLRA was not passed until well after respondents had been declared prevailing parties and thus entitled to attorney's fees. To impose the new standards now, for work performed before the PLRA became effective, would upset the reasonable expectation of the parties.

Martin, 527 U.S. at 359-60.

14

Applying the reasoning set out in Martin to this case, it is clear that § 4 of the OGA would "have a retroactive effect," id. at 358, if it were construed to cover the defendant's voluntary initiation of a new search for documents responsive to the plaintiff's FOIA request and subsequent release of newly-discovered documents.  Just as the plaintiffs' attorneys in Martin monitored the defendants' compliance in that case with the understanding that they would be paid a certain fee for their work, so, too, the defendant in this case initiated a new search with the understanding that any documents produced as a result of that search could not be used as a basis for awarding attorney's fees to the plaintiff pursuant to Buckhannon.  And like the fee limitation sought by the defendants in Martin, applying § 4 of the OGA to the defendant in this instance "would upset the reasonable expectations of the parties," id. at 360, and would therefore clearly have a retroactive impact on the rights of the defendant.  As for the plaintiff's argument that attorney fee awards are "collateral" to the main litigation between the parties, its point "does not advance the retroactivity inquiry," id. at 359, and accordingly provides no basis for construing § 4 of the OGA in a retroactive manner.

Because Congress did not specify whether § 4 of the OGA should apply retroactively, and because the statute, if applied in such a fashion, would retroactively affect the substantive rights of the defendant, the "traditional presumption" against retroactivity applies, Landgraf, 511 U.S. at 280, and the Court must construe the statute as having only prospective force.  But even if the Supreme Court had never recognized the presumption against retroactive application in Landgraf, this Court would still read the statute in this manner because the provision at issue expands the scope of the government's waiver of sovereign immunity by broadening the circumstances under which a plaintiff in a FOIA case can recover attorney's fees.  See In re Jordan, 745 F.2d 1574,

15

1576 (D.C. Cir. 1984) (noting that statutory provision "permitting the subject of an independent counsel's investigation to recover attorney's fees in particular cases[] is a waiver of the United States'[s] sovereign immunity"). "The federal government may waive its sovereign immunity by statute, but that waiver 'must be unequivocally expressed in statutory text,'" Webman v. Fed. Bureau of Prisons, 441 F.3d 1022, 1025 (D.C. Cir. 2006) (quoting Lane v. Peña, 518 U.S. 187, 192 (1996)), "[a]nd courts must strictly construe any waiver of sovereign immunity, in terms of its scope, in favor of the sovereign," id. (internal quotation and citation omitted). Thus, even before the Supreme Court clarified in Martin that Landgraf's presumption against retroactive application of a statute could apply to attorney fee statutes, the District of Columbia Circuit held in Brown v. Secretary of Army, 78 F.3d 645 (D.C. Cir. 1996), that a newly-enacted statutory provision authorizing the imposition of attorney's fees against the government could not be interpreted to apply retroactively absent clear legislative intent to that effect notwithstanding the Supreme Court's ruling in Bradley, see id. at 648-654 ("we believe that the rule of strict construction displaces the Bradley analysis when the question is whether a waiver of sovereign immunity is to be applied retroactively"); see also Trout v. Sec'y of Navy, 317 F.3d 286, 289-93 (D.C. Cir. 2003) (recognizing Brown's continued vitality, especially in light of the Supreme Court's decisions in Martin and St. Cyr).

  The plaintiff's remaining arguments are even less colorable. It suggests that § 4 of the OGA is merely a clarification of pre-existing law based on Congress's "concern[] that the holding in Buckhannon could be extended to FOIA cases." Pl.'s Mem. at 6. However, the reality is that the District of Columbia Circuit had already extended Buckhannon into the FOIA arena in OCAW by the time that the OGA went into effect and that the passage of the statute did

not so much clarify the operative law in this Circuit as overturn it. And while the plaintiff correctly points out that its motion for reconsideration was still pending at the time of the OGA's enactment, it was the defendant's <u>voluntary</u> decision to renew its search for documents responsive to the plaintiff's FOIA request, not the plaintiff's motion for reconsideration, that led to the production of the five documents that serve as the basis for the plaintiff's attorney fee request. Indeed, as the Court noted in its Reconsideration Order, the plaintiff's motion for reconsideration was "utterly frivolous" and did not advance its cause in the slightest. Reconsideration Order at 3.

### IV. Conclusion

"Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and conform their conduct accordingly." <u>Landgraf</u>, 511 U.S. at 265. Here, the plaintiff advocates a statutory construction of § 4 of the OGA that would not only deny the defendant that opportunity, but also would run afoul of the strict construction of the text at issue that is required whenever a statute broadens the government's waiver of sovereign immunity. The Court cannot interpret the statute in such a manner, and, consistent with the Supreme Court's decision in <u>Buckhannon</u> and the Circuit Court's decision in <u>OCAW</u>, it must therefore deny the plaintiff's motion for attorney's fees.

**SO ORDERED** this 1st day of July, 2008.[1]

REGGIE B. WALTON<br>United States District Judge

---

[1] An order follows denying the plaintiff's motion.