UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
N.Y.C. APPAREL F.Z.E.,              )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   Civil Action No. 04-2105  (RBW)
                                    )
U.S. CUSTOMS AND                    )
BORDER PROTECTION BUREAU,           )
                                    )
            Defendant.              )
_____)

**MEMORANDUM OPINION**

N.Y.C. Apparel F.Z.E. initiated this civil lawsuit on December 3, 2004, seeking to compel the disclosure of certain records requested from the United States Customs and Border Protection Bureau pursuant to the Freedom of Information Act (the "FOIA"), 5 U.S.C. §§ 552-552b (2006). Currently before the Court is the plaintiff's motion for reconsideration of the Court's order denying its request for an award of attorney's fees in the amount of $21,722.50 (the "Pl.'s Mot."). After carefully reviewing the plaintiff's motion and the defendant's opposition to that motion (the "Def.'s Opp'n"), along with the Court's prior order, its accompanying memorandum opinion, and all motions, memoranda of law, and exhibits previously considered by the Court in reaching its prior decision, the Court concludes that it must deny the plaintiff's motion for the reasons that follow.

As this Court has noted in the past, motions for reconsideration under Rule 59(e) are "disfavored" and "should be granted only under extraordinary circumstances." Ctr. for Sci. in the Pub. Interest v. FDA, No. Civ. A. 03-1962, 2004 WL 2218658, at *2 (D.D.C. Sept. 17, 2004) (Walton, J.). Indeed, such a motion "need not be granted unless the district court finds that there

is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Messina v. Krakower, 439 F.3d 755, 758 (D.C. Cir. 2006) (internal citation and quotation marks omitted).  The plaintiff does not contend that there has been a "change of controlling law" since the Court denied its motion for attorney's fees, that there is any "new evidence" that merits the Court's attention, or that some form of "manifest injustice" will result from the Court's order.  Thus, the only possible basis for reconsideration of the Court's order denying the plaintiff's request for attorney's fees would be a "clear error" in the legal reasoning leading to the entry of the order.

In its memorandum opinion addressing the merits of the plaintiff's motion for attorney's fees, the Court held that § 4 of the OPEN Government Act of 2007 (the "OGA"), Pub. L. 110-175, 121 Stat. 2524 (2007), which amends 5 U.S.C. § 552(a)(4)(E) to permit attorney's fee awards where, inter alia, there is "a voluntary or unilateral change in position by [an] agency" that refuses a FOIA request and "the complainant's claim is not insubstantial," Pub. L. 110-175, § 4(a), 121 Stat. at 2525, does not have retroactive effect and therefore does not apply to the plaintiff's motion for attorney's fees, see N.Y.C. Apparel F.Z.E. v. U.S. Customs and Border Prot. Bureau, 563 F. Supp. 2d 217, 220 (D.D.C. 2008) (concluding that "§ 4 of the OGA cannot be applied retroactively to the circumstances of this case").  Under the standard governing requests for attorney's fees under the FOIA in effect prior to § 552(a)(4)(E)'s amendment, "the plaintiff must have secured either a judgment on the merits of its claim or a court-ordered consent decree to qualify" for attorney's fees under the FOIA pursuant to the Supreme Court's ruling in Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Services, 532 U.S. 598 (2001), and the District of Columbia Circuit's application of that ruling to the FOIA context in Oil, Chemical & Atomic Workers International Union v.

Department of Energy, 288 F.3d 452 (D.C. Cir. 2002). N.Y.C. Apparel, 563 F. Supp. 2d at 221. "[B]ecause there was no judgment or consent decree compelling the defendant to undertake" the search giving rise to the plaintiff's attorney's fee request, id. at 221-22, and because the OGA does not have retroactive effect, the Court concluded that it had no choice but to deny the plaintiff's motion for attorney's fees, id. at 227.

The plaintiff argues that the Court should reconsider its decision based upon two decisions (one from another member of this Court) issued contemporaneously with this Court's prior memorandum opinion holding that the OGA has retroactive force. Pl.'s Mot. at 2-3. The plaintiff also repeats its argument, previously rejected by the Court, that the amended version of § 552(a)(4)(E) should govern its attorney's fee request because its motion for reconsideration of a prior order from the Court granting summary judgment in favor of the defendant was still pending when that amendment went into effect. Id. at 3; see also N.Y.C. Apparel, 563 F. Supp. 2d at 227 (reasoning that "it was the defendant's voluntary decision to renew its search for documents," which occurred prior to the passage of the OGA, not the plaintiff's "utterly frivolous" motion for reconsideration, "that led to the production of the five documents that serve[d] as the basis for the plaintiff's attorney fee request" (internal citation and quotation marks omitted)).[1] The defendant counters that "[t]he fact that other district courts reached different conclusions" from this Court "is not grounds to alter or amend the judgment" in this case, Def.'s Opp'n at 3, and that "[t]o impose upon [the d]efendant a liability that it was not subject to during the course of the substantive litigation in this case would be a manifest injustice," id. at 4.

---

[1] "A Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled . . . ." Lemmons v. Georgetown Univ. Hosp., 241 F.R.D. 15, 22 (D.D.C. 2007) (Walton, J.) (internal citation and quotation omitted). The Court therefore summarily rejects the plaintiff's renewed argument that § 4 of the OGA applies to its attorney's fees request just because its motion for reconsideration was still pending when that legislation was enacted.

3

The Court agrees with the defendant that a disagreement between two district courts, or even two members of the same district court, over a specific legal issue does not necessarily warrant reconsideration under Rule 59(e). See Messina, 439 F.3d at 758 (requiring reconsideration only where "there is an intervening change of controlling law" (emphasis added) (internal citation and quotation marks omitted)). Nevertheless, the Court has carefully reviewed the two decisions cited by the plaintiff in his motion. Having completed this review, the Court remains convinced that its initial ruling was correct.

The first decision cited by the plaintiff in his motion, Wildlands CPR v. United States Forest Service, 558 F. Supp. 2d 1096 (D. Mont. 2008), barely addresses the issue of retroactivity. In that case, Wildlands CPR filed a suit under the FOIA against the United States Forest Service. Id. at 1097. "After a year of pretrial litigation, the parties participated in a court-mediated settlement conference," which resulted in an amended consent decree. Id. Thereafter, the plaintiff filed a motion for costs and attorney's fees. Id. The defendant opposed this motion, arguing, inter alia, "that the [OGA] [did] not apply" to the plaintiff's motion "because [the p]laintiff filed its suit [eighteen] months prior to the passage of the [a]ct." Id. at 1098.

The district court found this argument to be "easily dispatched" by the Supreme Court's decision in Landgraf v. USI Film Products, 511 U.S. 244 (1994), where the Supreme Court found that a prior case permitting the retroactive application of an attorney's fees statute, Bradley v. School Board of City of Richmond, 416 U.S. 696 (1974), "did not resemble the cases in which [it] ha[d] invoked the presumption against statutory retroactivity" in part because "[a]ttorney's fee determinations . . . are collateral to the main cause of action and uniquely separable from the cause of action to be proved at trial," Landgraf, 511 U.S. at 277 (internal citation and quotation marks omitted) (quoted in Wildlands, 563 F. Supp. 2d at 1099). Based upon this language in

4

Landgraf, the district court in Wildlands concluded that "[t]he presumption against retroactivity does not apply here."  Wildlands, 563 F. Supp. 2d at 1099.

This reasoning coincides with an argument made by the plaintiff in his original motion for attorney's fees in this case.  See N.Y.C. Apparel, 563 F. Supp. 2d at 223 ("The plaintiff argues that § 4 of the OGA does not have any retroactive effect on the substantive rights of the defendant because the statute affects only attorney's fee[s] awards, which are collateral to the main cause of action." (internal citation and quotation marks omitted)).  As this Court explained in rejecting that argument, neither Bradley nor Landgraf stand for the proposition "that all statutory provisions regarding attorney's fees awards (as opposed to the specific provision at issue in Bradley) should be deemed not to have any substantively retroactive effect."  Id. at 224.  Rather, "Bradley . . . turned in large part on the lack of any prejudice to the substantive rights of the defendant, coupled with the fact that the defendant was already on notice that it might have to pay attorney['s] fees before Congress passed" the attorney's fee statute at issue in that case.  Id.

As for Landgraf, the Supreme Court's passing observation in that case about the supposedly "collateral" nature of attorney's fee statutes was never intended to be and should not be construed as crafting "'an exception to the rule'" against interpreting statutes to have retroactive effect.  Id. (quoting Hughes Aircraft Co. v. United States, 520 U.S. 939, 951-52 (1997)).  Indeed, the Supreme Court has subsequently observed that labeling a type of statute as "'collateral'" or "'procedural'" is "'not enough'" to determine "'whether a new statute operates retroactively,'" and that "[a]ttaching the label 'collateral' to attorney's fees questions does not advance the retroactivity inquiry.'"  Id. at 225-26 (quoting Martin v. Hadix, 527 U.S. 343, 258-59 (1999)).  The perfunctory reliance of the Wildlands court on the language in Landgraf quoted above does not accord with this observation.  The Court thus finds Wildlands no more persuasive

5

than the plaintiff's original argument to the same effect, and rejects it for the same reasons that it rejected the plaintiff's argument in its prior memorandum opinion.

The second case cited by the plaintiff, Judicial Watch, Inc. v. Bureau of Land Management, 562 F. Supp. 2d 159 (D.D.C. 2008), addressed the issue of retroactivity in greater detail. In that case, Judicial Watch, Inc., "a not-for-profit organization dedicated to promoting transparency and accountability in government through investigation and dissemination to the public of information regarding official misconduct," initiated a civil lawsuit against the Bureau of Land Management under the FOIA seeking the "release of all documents regarding the activities of three high-ranking federal officials in connection with land transactions in Coyote Springs Valley, Nevada." Id. at 162. After the defendant produced thirty-five pages of documents in response to the plaintiff's lawsuit and conducted a supplemental search at the plaintiff's behest without locating any additional documents, the parties agreed to enter into a stipulated judgment. Id. at 163. Thereafter, the plaintiff filed a motion for attorney's fees. Id. The defendant opposed this motion in part on the grounds that "the [OGA] amendments to the FOIA fee-shifting provision [could not] be applied retroactively," and that the plaintiff's attorney's fee request "fail[ed] when subject[ed] to the 'prevailing party' analysis" preceding those amendments. Id. at 166.

Faced with the same issue presented here—whether the OGA can be applied retroactively to attorney's fee requests based on conduct occurring prior to the bill's enactment—another member of this Court reached a conclusion contrary to that of this member of the Court. The Court reached this result in two stages. First, it concluded that interpreting § 552(a)(4)(E), as amended by the OGA, to have retroactive application did not run afoul of the presumption against interpreting statutes to have retroactive effect articulated in Landgraf. Id. at 167-70.

Second, it found that interpreting the statute in this manner did not violate the normal presumption in favor of the narrowest possible construction of statutes waiving sovereign immunity based upon the District of Columbia Circuit's ruling in Thompson v. Sawyer, 678 F.2d 257 (D.C. Cir. 1982). Judicial Watch, 562 F. Supp. 2d at 170-72. This member of the Court reached the exact opposite conclusion with respect to both of these issues. See N.Y.C. Apparel, 563 F. Supp. 2d at 223-26 (reasoning that "[b]ecause Congress did not specify whether § 4 of the OGA should apply retroactively, and because the statute, if applied in such a fashion, would retroactively affect the substantive rights of the defendant, the 'traditional presumption' against retroactivity applies" (quoting Landgraf, 511 U.S. at 280)); see also id. at 226-27 (reasoning that § 4 of the OGA cannot be applied retroactively even if it did not violate the presumption against retroactivity because it "expands the scope of the government's waiver of sovereign immunity by broadening the circumstances under which a plaintiff in a FOIA case can recover attorney's fees").

The analysis in Judicial Watch with respect to the issue of retroactivity differs from the reasoning employed by this member of the Court chiefly in its treatment of Martin. That case involved a dispute over whether certain attorney's fees provisions enacted by the Prison Litigation Reform Act of 1995 (the "PLRA"), Pub. L. 104-134, 110 Stat. 1321 (1996), that limited the amount of fees that attorneys who litigated prisoner lawsuits could recover applied retroactively to work performed by attorneys prior to the statute's enactment. Martin, 527 U.S. at 347-51. The Supreme Court concluded that the attorney's fees provisions, if interpreted to apply retroactively, would have an impermissible retroactive effect on the substantive rights of the attorneys seeking full recovery for work performed in prisoner lawsuits prior to the statute's enactment because they "would alter the fee arrangement post hoc by reducing the rate of

7

compensation" for those attorneys, thereby "attach[ing] new legal consequences to completed conduct." Id. at 358 (internal citation and quotation marks omitted). The Court also distinguished the case before it from Bradley on the grounds that in Bradley "attorney's fees were available, albeit under different principles, before passage of the statute [providing for an award of attorney's fees], and because the [d]istrict [c]ourt had in fact already awarded fees invoking these different principles" prior to the enactment of that statute, whereas in Martin "the parties ha[d] proceeded on the assumption that [the prior statutory provision governing the award of attorney's fees] would govern," and "[t]o impose the new standards [of the PLRA] now, for work performed before the PLRA became effective, would upset the reasonable expectation of the parties." Id. at 359-60.

Based upon this reasoning, the undersigned member of the Court concluded that § 4 of the OGA, like the attorney's fees provisions at issue in Martin, "would 'have a retroactive effect' . . . if it were construed to cover the defendant's voluntary initiation of a new search for documents responsive to the plaintiff's FOIA request and subsequent release of newly-discovered documents." N.Y.C. Apparel, 563 F. Supp. 2d at 226. As this member of the Court explained:

> Just as the plaintiff's attorneys in Martin monitored the defendants' compliance in that case with the understanding that they would be paid a certain fee for their work, so, too, the defendant in this case initiated a new search with the understanding that any documents produced as a result of that search could not be used as a basis for awarding attorney's fees to the plaintiff pursuant to Buckhannon. And like the fee limitation sought by the defendants in Martin, applying § 4 of the OGA to the defendant in this instance would upset the reasonable expectations of the parties, . . . and would therefore clearly have a retroactive impact on the rights of the defendant.

Id. (internal citation and quotation marks omitted),

The Court took a different view with respect to <u>Martin</u>'s applicability in <u>Judicial Watch</u>. While it acknowledged that, post-<u>Martin</u>, there was no "absolute mandate" in applying the presumption against retroactivity to attorney's fee provisions, the Court held in that case that "the Supreme Court's general rule persists that alterations to attorney's[]fees provisions would not operate impermissibly if applied retroactively." <u>Judicial Watch</u>, 562 F. Supp. 2d at 168.  It also found the circumstances of <u>Martin</u> to be "fundamentally different" from the situation before the Court "in that the question [before it was] whether to award [a] plaintiff attorney's fees where [the] defendant (i.e.[,] the putative wrongdoer) did not expect to pay these fees, not whether taking away an award long ago given to a prevailing party produces an impermissible retroactive effect." <u>Id.</u> at 169.[2]

With all due respect to the analysis in <u>Judicial Watch</u>, this member of the Court finds neither of these points persuasive.  First, as explained above, there is no "general rule" providing that "alterations to attorney's[]fees provisions [do] not operate impermissibly if applied retroactively," nor has the Supreme Court ever purported to make one.  The only possible basis for such a "rule" is an offhand remark from a decision <u>denying</u> retroactive effect to a statutory provision that did not even involve attorney's fees.  See <u>Landgraf</u>, 511 U.S. at 286 (holding that statutory provision permitting compensatory and punitive damages for certain violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 (2000), could not be applied retroactively).  And to the extent one could have inferred from <u>Landgraf</u> that attorney's fees

---

[2]  In <u>Judicial Watch</u>, the Court buttressed its position by pointing out that a third member of this Court "has held that amendments affecting attorney's[]fees collection under [the] FOIA may permissibly operate retroactively[] notwithstanding [the] absence of congressional intent in statutory text and legislative history." <u>Judicial Watch</u>, 562 F. Supp. 2d at 168 (citing <u>Tax Analysts v. IRS</u>, No. 96-2285, 2000 WL 689324, at *3 (D.D.C. Mar. 31, 2000) (Kollar-Kotelly, J.)).  However, since <u>Judicial Watch</u> was issued, two other members of this Court have found that § 4 of the OGA cannot be interpreted to apply retroactively.  See <u>Davis v. Dep't of Justice</u>, No. 88-130, 2009 WL 755192, at *2-4 (D.D.C. Mar. 24, 2009) (Kennedy, J.) (rejecting an interpretation of the OGA that would apply the legislation retroactively on sovereign immunity grounds); <u>Judicial Watch, Inc. v. FDA</u>, Civil Case No. 00-2973 (RJL), 2009 WL 873999, at *1 (D.D.C. Mar. 31, 2009) (Leon, J.) (same).  Thus, there appears to be a substantial split within this Court on this particular issue.

provisions should be free from the presumption against retroactivity due to their "collateral" nature, such an inference is now foreclosed by Martin, which found not only that this distinction is "not enough" to determine "whether a new statute operates retroactively," but also that it "does not advance the retroactivity inquiry" to any degree.  Martin, 527 U.S. at 258-59.  It is simply untenable to infer a "general rule" from a distinction that the Supreme Court has subsequently pronounced irrelevant, and this member of the Court declines to do so.

Second, this member of the Court cannot accept the distinction drawn in Judicial Watch between attorney's fees provisions that award a plaintiff previously unrecoverable fees, the retroactive application of which were deemed to be equitable, and those provisions that reduce or eliminate such awards, which could not be fairly applied in a retroactive manner.  Judicial Watch, 562 F. Supp. 2d at 169.  Defendants, no less than plaintiffs, will have "reasonable expectations" about the consequences of their conduct, and will be no less blindsided by new statutory provisions establishing or enhancing attorney's fees awards than plaintiffs faced with newly enacted statutory provisions eliminating or curbing such rewards.  This is especially so where, as here, the statutory provision at issue permits attorney's fees even where there is no determination by a court that the "putative wrongdoer" (i.e., the defendant), id., has actually done something wrong, see 5 U.S.C. § 552(a)(4)(E) (requiring only that a plaintiff's claim be "not insubstantial" for a plaintiff to recover attorney's fees from a defendant who voluntarily produces documents).  Contrary to the Court's reasoning in Judicial Watch, there is no equity in compelling the defendant to suffer the unforeseeable penalty of attorney's fees based on its voluntary decision to reinitiate its search for documents responsive to the plaintiff's original request.

This member of the Court is therefore unreceptive to the notion that interpreting § 4 of the OGA to operate retroactively fulfills the "overarching goals of FOIA" by punishing the defendant's "lackadaisical attitude toward[s] dissemination of government information to the interested public." Judicial Watch, 562 F. Supp. 2d at 169. "It will frequently be true . . . that retroactive application of a new statute would vindicate its purpose more fully," but "[t]hat consideration . . . is not sufficient to rebut the presumption against retroactivity." Landgraf, 511 U.S. at 285-86. Instead, there must be "clear congressional intent" to make a statute retroactive in application to overcome that presumption. Id. at 280.

The Court in Judicial Watch found this intent in a floor statement from Senator Patrick Leahy, the sponsor of the OGA, to the effect that the OGA was intended to "clarif[y] that Buckhannon does not apply to FOIA cases." Judicial Watch, 562 F. Supp. 2d at 169 (emphasis removed) (quoting 153 Cong. Rec. S15701-04 (daily ed. Dec. 14, 2007) (statement of Sen. Leahy)). It suggested that Senator Leahy's "use of the word 'clarify,' along with his use of the present tense in stating that the bill 'does not apply[,]' . . . indicate[d] an intent that the amended fee provision be applied retroactively." Id. The Court reasoned that this result accorded with the Supreme Court's ruling in Rivers v. Roadway Express, Inc., 511 U.S. 298 (1994), where the Supreme Court "distinguished between congressional statements discussing a statute's 'restoration' of rights with those mentioning a statute's 'enlargement' of rights, reasoning that the former indicated an intent to retroactively apply amendments, whereas the latter evinced an intent to limit application to prospective cases," Judicial Watch, 562 F. Supp. 2d at 169.

The reliance by the Court in Judicial Watch on Rivers is puzzling. That decision, issued contemporaneously with Landgraf, addressed the temporal scope of another provision of the same statute at issue in Landgraf. Rivers, 511 U.S. at 301-03. The Supreme Court held that the

11

provision before it, like the provision in Landgraf, could not be applied retroactively "because it create[d] liabilities that had no legal existence before the [statute in question] was passed," id. at 313, and the Court "[could not] find . . . any clear expression of congressional intent to reach cases that arose before its enactment," id. at 306.

In conducting its review of the legislative history of the statutory provision at issue, the Supreme Court focused on the fact that a prior version of the bill "unambiguously declared that it was intended to 'respond to the Supreme Court's recent decisions by restoring the civil rights protections that were dramatically limited by those decisions,'" id. (citing Civil Rights Act of 1990, S. 2104, 101st Cong., 2d Sess., § 2(b)(1) (1990)) (emphasis supplied by the Supreme Court in Rivers), and one section of that prior bill "expressly provided that the amendment [in question] 'shall apply to all proceedings pending on or commenced after'" the date of the decision abrogated by the enactment of the statute, id. at 307-08. The Court inferred from the absence of similar language in the final version of the bill that Congress did not intend for the bill to have retroactive effect. Id. at 308. Finally, the Court noted that "[t]he [floor] statements [from members of Congress] that most strongly support[ed] such coverage [were to be] found in the debates on the [prior version of the] bill," and that "[t]he statements relating specifically to [the final version of the bill did] not provide reliable evidence on whether Congress intended to 'restore' a broader meaning of [the amended statute] with respect to pending cases." Id.

The Court in Judicial Watch seized upon this discussion of the legislative history of the bill at issue in Rivers to support its belief that Senator Leahy intended for the OGA to have retroactive effect. Judicial Watch, 562 F. Supp. 2d at 169. But in Rivers, the Supreme Court expressly disavowed any "suggest[ion] that Congress' use of the word 'restore' necessarily [bespoke] an intent to restore retroactively," explaining that the phrase "'to restore' might

12

sensibly be read as meaning 'to correct[] from now on.'" Rivers, 511 U.S. at 307 n.7 (emphasis in original). Instead, it was the "other provisions" of the prior version of the bill at issue "that made pellucidly clear that Congress contemplated the broader, retroactive kind of 'restoration.'" Id. There are no "other provisions" of this sort in the OGA. N.Y.C. Apparel, 563 F. Supp. 2d at 222 ("Here, the statutory provision in question is silent with respect to the issue of retroactivity."). Senator Leahy's floor statement, by itself, is therefore "ambigu[ous]" at most. Id.

Even assuming that Senator Leahy intended for the OGA to have retroactive effect, that does not mean that the entire Congress intended such a result. As the Court in Judicial Watch admitted, "[t]he absence of . . . an express provision" rendering the OGA retroactive in scope "may indicate that Senator Leahy could not marshal the necessary votes to memorialize his view of the statute's proper application to pending cases." Judicial Watch, 562 F. Supp. 2d at 169 n.2. Regardless of whether Senator Leahy was "the bill's sponsor and chief driving force," id., his lone statement "falls far short of providing evidence of an agreement among legislators on the subject," Rivers, 511 U.S. at 308 n.8; cf. Bath Iron Works Corp. v. Dir., Office of Workers' Compensation Programs, 506 U.S. 153, 166 (1993) (giving "no weight to a single reference by a single Senator during floor debate in the Senate" where "the text of the statute [was] unambiguous on the point at issue"). Because there is no "clear expression of congressional intent to reach cases that arose before [the OGA's] enactment," Rivers, 511 U.S. at 307 (emphasis added), this member of the Court finds the presumption against interpreting the OGA retroactively to be unrebutted and therefore dispositive of the plaintiff's request for attorney's fees.

Equally unpersuasive is the distinction drawn in Judicial Watch between the statutory provision at issue in that case (and here) and the statutory provisions at issue in Brown v. Secretary of Army, 78 F.3d 645 (D.C. Cir. 1996), and Trout v. Secretary of Navy, 317 F.3d 286 (D.C. Cir. 2003), where the District of Columbia Circuit held that statutory provisions awarding attorney's fees against the government cannot be interpreted to have retroactive application absent clear legislative intent based upon the canon of statutory construction that a waiver of sovereign immunity must be construed narrowly.  See Brown, 78 F.3d at 648-54 (holding that "the rule of strict construction displaces the Bradley analysis when the question is whether a waiver of sovereign immunity is to be applied retroactively"); see also Trout, 317 F.3d at 289-93 (recognizing Brown's continued vitality).  There being no question that a statutory provision permitting attorney's fees awards constitutes a waiver of sovereign immunity by the government, see In re Jordan, 745 F.2d 1574, 1576 (D.C. Cir. 1984) (characterizing a statutory provision permitting the subject of an independent counsel's investigation to recover attorney's fees in certain cases as "a waiver of the United States'[s] sovereign immunity"),[3] Brown and Trout necessarily operate as a separate bar to any interpretation of the OGA that would provide for retroactive application of the act.

The Court in Judicial Watch distinguished these cases indirectly.  It noted that "[t]he court in Brown . . . stressed that its ruling did not upset the decision in Thompson v. Sawyer, 678 F.2d 257 (D.C. Cir. 1982)," which the Court described as "a case in which the court allowed retroactive application of a statute waiving sovereign immunity" even though there was no "clear

---

[3] The Court in Judicial Watch found Jordan to be "inapposite" because the attorney's fees provision in that case "added, rather than merely clarified, a fee-collection provision," whereas "[the] FOIA has long contained a fee-shifting provision."  Judicial Watch, 562 F. Supp. 2d at 172.  From the perspective of this member of the Court, this is a distinction without a difference: whenever Congress allows individuals to recover more funds than it has previously permitted, that is a partial waiver of the government's sovereign immunity regardless of whether the increased recovery is the result of the enactment of a particular provision or that provision's enlargement.  Cf. Kalodner v. Abraham, 310 F.3d 767, 770 (D.C. Cir. 2002) (remarking that "the sine qua non of federal sovereign immunity is the federal government's possession of the money in question" (emphasis in original)).

14

congressional intent" in favor of retroactive application of the statute.  Judicial Watch, 562 F. Supp. 2d at 170.  It then concluded that there were "important parallels" between Thompson and the case before the Court; most notably, the fact that in each case "'Congress provided federal employees with a new arsenal of remedies—not rights, but remedies.'"  Id. at 171 (quoting Thompson, 678 F.2d at 287-88) (emphasis supplied by the Court in Judicial Watch).  Finally, the Court recognized that in Tomasello v. Rubin, 167 F.3d 612 (D.C. Cir. 1999), the District of Columbia Circuit "interpreted reliance on Thompson as requiring evidence of congressional intent if the party wished for the court to retroactively apply the statute in question," but it believed that it "[was] not bound" by this "dicta," and that the Court could satisfy the Tomasello standard in any event, Judicial Watch, 562 F. Supp. 2d at 171.

The reliance of the Court in Judicial Watch on Thompson to evade the reach of Brown and Trout is suspect.  As it explained in Brown, the District of Columbia Circuit has never relied on Thompson "to suggest in any way that a waiver of sovereign immunity may be applied retroactively if the Congress was silent upon that question," and Judge Mikva, who authored the Thompson opinion, "later characterized Thompson as a case of the court following known congressional intent."  Brown, 78 F.3d at 652.  It is therefore not surprising that in Tomasello the District of Columbia Circuit construed Thompson as being a case in which the court "applied the amended statute [in that case] not because the application was not retroactive[,] but because [the court was] following express congressional intent."  Tomasello, 167 F.3d at 620.

Given the consistent interpretation of Thompson by the District of Columbia Circuit as standing for the unremarkable proposition that a waiver of sovereign immunity may be deemed retroactive in effect only where there is clear congressional intent to that effect—a proposition that this member of the Court does not dispute—it is perplexing that in Judicial Watch the Court

15

instead concluded that the true import of Thompson is its distinction between "right[s]," which, according to Judicial Watch, cannot be altered retroactively, and "remedies," which can. Judicial Watch, 562 F. Supp. 2d at 171. It is even more perplexing that the Court would place § 4 of the OGA in the latter category on the grounds that "[t]he new fee-shifting provision merely affected possible remedies, not rights." Id. After all, this observation, if correct, would apply with equal force to any attorney's fees provision, including those at issue in Brown and Trout. Yet, the District of Columbia Circuit explicitly rejected the belief that those provisions could be applied retroactively because of the canon of statutory construction favoring narrow readings of waivers of sovereign immunity. Brown, 78 F.3d at 648-54; Trout, 317 F.3d at 289-93. This member of the Court must therefore conclude that the analysis in Judicial Watch is simply irreconcilable with the binding precedent of this Circuit.

Read collectively, Thompson, Brown, Tomasello, and Trout stand for the well-established proposition that legislation cannot be interpreted to apply retroactively unless it is clear from the face of the statute or the legislative record that Congress intended for such a result. As noted above, the Court in Judicial Watch believed that the floor statement of Senator Leahy sufficed to demonstrate such intent. This member of the Court respectfully disagrees with that assessment. See supra, discussion. Accordingly, the plaintiff's motion for reconsideration is without merit insofar as it relies on the Court's analysis in Judicial Watch.

"Even when Congress intends to supersede a rule of law embodied in one of [the Supreme Court's] decisions with what it views as a better rule established in earlier decisions, its intent to reach conduct preceding the 'corrective' amendment must clearly appear." Rivers, 511 U.S. at 313. The rulings in Wildlands and Judicial Watch notwithstanding, this

16

member of the Court does not find any such intent on the face of the OGA or in its legislative history. The Court must therefore deny the plaintiff's motion for reconsideration.

**SO ORDERED** this 27th day of May, 2009.[4]

REGGIE B. WALTON<br>United States District Judge

---

[4] This memorandum opinion accompanies an earlier order issued by the Court (1) denying the plaintiff's motion for reconsideration and (2) specifying that the order would be stayed until this Court issued this memorandum opinion. Thus, the earlier order entered by the Court is no longer stayed as of the date of the issuance of this memorandum opinion.